FARM CREDIT SERVICES OF MICHIGAN'S HEARTLAND,
PCA v WELDON

Docket No. 183696. Submitted October 7, 1997, at Lansing. Decided
November 24, 1998, at 9:00 A.M.

Farm Credit Services of Michigan's Heartland, P.C.A., brought an
action in the Livingston Circuit Court against Major K. and Crystal
C. Weldon, seeking a deficiency judgment and the recovery of col-
lateral after foreclosing on various mortgages and secured loans
owed by the defendants in connection with their farming opera-
tions. The defendants filed a multicount countercomplaint. With
respect to the plaintiff's claim, a consent judgment awarding the
plaintiff the deficiency with interest and ordering the defendants to
surrender property pledged as collateral was entered. The counter-
claims were tried before a jury. The court, Daniel A. Burress, J.,
granted the plaintiff's motions for a directed verdict regarding
claims of invalid foreclosure (count V), tortious interference with
contract (count VIII), and fraud (count X). The jury awarded the
defendants damages with respect to their claims of bad-faith
refusal to advance 1991 operating funds (count I), and bad-faith
breach of contract and breach of fiduciary duty in refusing the
defendants' request that the plaintiff apply a portion of a crop-
proceeds check payable to the defendants and the plaintiff toward
a mortgage held by the Federal Land Bank (counts II and VI). The
jury also found for the defendants with regard to their claim that
the plaintiff, by duress, had obtained a May 1990 mortgage on prop-
erty known as the Partaka farm, but awarded no damages (count
VII). The court set aside the verdict regarding count VII as inconsis-
tent with the jury's award of damages for the loss of the same
property. The jury found for the plaintiff with respect to the
defendants' claims of bad-faith failure to lend funds for the comple-
tion of a grain-drying system (count III), bad-faith failure to lend
funds for the completion of a grain storage barn (count IV), and tor-
tious interference with contract (count IX). The court denied the
plaintiff's motion for judgment notwithstanding the verdict with
regard to counts I, II, VI, and VII. Pursuant to the parties' agreement,
the court reduced the defendants' award for loss of real estate by
deducting from it the amount of outstanding liens and encum-

brances on the property. The defendants appealed, and the plaintiff cross appealed.

The Court of Appeals *held*:

1. The trial court did not err in granting the plaintiff a directed verdict with regard to count V of the defendants' countercomplaint, which alleged that the plaintiff improperly foreclosed on the mortgage to property known as the Hudson farm because the mortgage covered only the original loan, not any future loans, and the original loan had already been paid. Although the trial court erred in not considering documents executed by the parties contemporaneously with the mortgage for purposes of determining whether the mortgage represented a complete integration of the parties' agreement, the error was harmless. None of the contemporaneously executed documents contradicted language in the mortgage document that the mortgage covered future loans.

2. The trial court erred in denying the plaintiff's motion for judgment notwithstanding the verdict with regard to count I of the defendants' countercomplaint, which alleged that the plaintiff, in bad faith, breached an agreement to lend operating funds for the 1991 growing season as a matter of law. The defendants presented insufficient evidence from which a jury could have found that the plaintiff, in bad faith, breached an agreement to finance the defendants' 1991 farming operations. The Basic Loan Agreement governing the parties' various supplemental loans and disbursements clearly authorized the plaintiff, in the event of the defendants' default, to refuse to lend or disburse additional money. Before and after the plaintiff's alleged promise to lend 1991 operating funds, the defendants were in default such that the plaintiff did not act in bad faith in refusing, as allowed under the Basic Loan Agreement, to lend additional money.

3. The trial court erred in denying the plaintiff's motion for judgment notwithstanding the verdict with regard to count II of the defendants' countercomplaint, which alleged that the plaintiff, in bad faith, refused to remit a portion of a crop-proceeds check, in which the plaintiff had a security interest, to the Federal Land Bank to satisfy a mortgage payment owed by the defendants. As a matter of law, the plaintiff's refusal to relinquish its bargained-for rights in collateral does not constitute bad faith.

4. Assuming, for purposes of argument, that the plaintiff, in bad faith, breached its obligation to lend (count I of the countercomplaint) and refused to relinquish collateral (count II of the countercomplaint), the defendants nevertheless failed, as a matter of law, to establish support for the amount of damages awarded by the jury. The plaintiff's alleged failure to lend did not proximately result

in defendants suffering any damages beyond whatever limited, incidental expense they incurred in securing alternative financing. The defendants failed to mitigate damages allegedly caused by the plaintiff's refusal to surrender collateral.

5. The trial court erred in denying the plaintiff's motion for judgment notwithstanding the verdict with regard to count VI of the defendants' countercomplaint, which alleged that the plaintiff owed a fiduciary duty to the defendants and breached that duty by refusing their request that it remit crop proceeds to the Federal Land Bank. A fiduciary relationship exists when there is a reposing of faith, confidence, and trust and the placing of reliance by one on the judgment and advice of another. In this case, the mere fact that the plaintiff maintained control over the terms of the defendants' loan repayment or participated in discussions regarding what crops to grow and how much money the defendants would need to borrow at various times are insufficient, as a matter of law, to establish a fiduciary relationship between the plaintiff and the defendants.

6. The trial court erred in denying the plaintiff's motion for judgment notwithstanding the verdict with regard to count VII of the defendants' countercomplaint, which alleged that the plaintiff, by duress, obtained a mortgage on one of the defendants' farms. To succeed with respect to a claim of duress, the defendants had to establish that they were illegally compelled or coerced to act by fear of serious injury to their persons, reputations, or fortunes. Fear of financial ruin alone is insufficient to establish economic duress; it must also be established that the person applying the coercion acted unlawfully. Because the defendants' did not allege that the plaintiff acted illegally, their claim of duress is meritless.

7. The trial court did not err in awarding attorney fees and costs to the plaintiff. The defendants stipulated an award of attorney fees when they consented to the judgment entered against them in the plaintiff's action.

Affirmed in part, reversed in part, and remanded for entry of judgment for the plaintiff with regard to counts I, II, VI, and VII of the countercomplaint.

JANSEN, P.J., concurring in part and dissenting in part, stated that the jury's verdict and the trial court's rulings should be affirmed in all respects. The majority is correct to the extent it decided that the defendants have not raised any issue requiring reversal. However, the trial court did not err in denying the plaintiff's motion for judgment notwithstanding the verdict with regard to counts I, II, VI, and VII of the countercomplaint, because there were factual questions for the jury to resolve and the counterclaim was not deficient

as a matter of law inasmuch as the defendants presented sufficient evidence to support each claim. The award of damages to the defendants falls within the range of the evidence and was not excessive or contrary to law.

1. MOTIONS AND ORDERS — DIRECTED VERDICTS — APPEAL.

The Court of Appeals, in reviewing a trial court's ruling regarding a motion for a directed verdict, examines the testimony and all legitimate inferences that may be drawn in the light most favorable to the nonmoving party; a directed verdict is appropriate only when no factual question exists with regard to which reasonable minds may differ.

2. EVIDENCE — PAROL EVIDENCE.

A finding that parties intended a written instrument to be a complete expression of their agreement with respect to matters covered is a prerequisite to the application of the parol evidence rule; extrinsic evidence of prior or contemporaneous agreements or negotiations is admissible as it bears on the threshold question whether the written instrument is such an integrated agreement.

3. MOTIONS AND ORDERS — JUDGMENT NOTWITHSTANDING THE VERDICT — APPEAL.

A motion for judgment notwithstanding the verdict may not be granted where reasonable minds can differ with regard to issues of fact; when deciding such a motion, a trial court must examine the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the nonmoving party; the Court of Appeals reviews a trial court's ruling regarding such a motion de novo.

4. CONTRACTS — LENDERS — GOOD FAITH.

The duty of good faith imposed upon contracting parties does not compel a lender to surrender rights that it has been given by statute or by the terms of its contract.

5. CONTRACTS — BREACH — DAMAGES.

Damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made.

6. BANKS AND BANKING — LENDERS — BORROWERS — FIDUCIARY RELATIONSHIPS.

A fiduciary relationship generally does not arise between lender and borrower but may exist when there is a reposing of faith, confidence, and trust and the placing of reliance by one on the judgment and advice of another.

7. WORDS AND PHRASES — DURESS.

   A person claiming duress must establish that the person was illegally
   compelled or coerced to act by fear of serious injury to person,
   reputation, or fortune.

*Learman, Peters, Sarow & McQuillan, P.L.C.* (by *John J. McQuillan*), for the plaintiff.

*Daniel L. Kraft*, for the defendants.

Before: JANSEN, P.J., and DOCTOROFF and GAGE, JJ.

GAGE, J. Defendants appeal as of right from a November 1994 trial court judgment awarding them $351,991.80. Defendants had filed a multiple-count counterclaim against plaintiff alleging misconduct relating to plaintiff's long-term relationship lending defendants money to support their farming operations. The jury found for defendants on several counts. Plaintiff cross appeals as of right from the November 1994 judgment.

Plaintiff is a federally created entity that makes loans to its borrowers/members for use in conducting agricultural activities. Defendants are farmers who, since the fall of 1980, have received numerous loans from plaintiff. From 1980 to 1990, plaintiff loaned defendants $839,805, of which defendants themselves received $460,000, with plaintiff, at defendants' direction, paying the difference to defendants' third-party suppliers and creditors. Although the parties agreed that their business relationship was initially very satisfactory, the relationship deteriorated from 1988 through 1990 because defendants became increasingly unable to repay their debt. Plaintiff eventually foreclosed on various mortgages and other security interests that it possessed in defendants' property and equipment.

Ultimately, plaintiff initiated the instant suit seeking a deficiency judgment against defendants and the recovery of plaintiff's remaining collateral. In response, defendants filed a ten-count counterclaim seeking recovery from plaintiff on theories ranging from bad-faith breach of contract and breach of fiduciary duty to tortious interference with contract and fraud.

Regarding plaintiff's complaint, the parties in July 1994 entered into a consent judgment for defendants' deficiency. The judgment awarded plaintiff $249,458.81 plus interest and ordered defendants to surrender various items of farm equipment pledged as collateral.

With respect to the counterclaim, the trial court granted plaintiff's motions for a directed verdict regarding several counts, including counts V (invalid foreclosure), VIII (tortious interference), and X (fraud). The remaining claims proceeded to verdict. The jury returned verdicts for defendants in the amounts of $315,000 on count I (bad-faith refusal to advance to defendants 1991 operating funds) and $500,000 on combined counts II and VI (plaintiff's bad-faith breach of contract and breach of fiduciary duty in refusing defendants' January 2, 1990, request that it apply a portion of a crop-proceeds check to a mortgage held by the Federal Land Bank [FLB], another creditor of defendants). The jury also found for defendants on count VII (plaintiff obtained May 1990 mortgage on a property known as the Partaka farm by duress), but awarded no damages on this count. However, the trial court set aside the jury's verdict for defendants with regard to this count as inconsistent with the jury's award of damages to defendants for the loss of the

same real estate. Regarding the remaining counts III (bad-faith failure to lend funds for completion of grain-drying system), IV (bad-faith failure to lend funds for completion of grain storage barn), and IX (tortious interference), the jury found for plaintiff.

Pursuant to the parties' agreement, the trial court reduced defendants' award for loss of real estate by deducting from it the amount of outstanding liens and encumbrances on defendants' property. Specifically, the trial court subtracted from defendants' award $513,599.28 in liens, encumbrances, and taxes, resulting in a preinterest net judgment of $301,400.72 for defendants.

Defendants first contend that the trial court erred in granting plaintiff a directed verdict with regard to count V of defendants' countercomplaint, which alleged that plaintiff did not have a valid mortgage on a property known as the Hudson farm, and therefore improperly foreclosed on this property. We review de novo the trial court's grant of a directed verdict. *Meagher v Wayne State Univ*, 222 Mich App 700, 708; 565 NW2d 401 (1997). In reviewing the trial court's ruling, we examine the testimony and all legitimate inferences that may be drawn in the light most favorable to the nonmoving party. *Kubczak v Chemical Bank & Trust Co*, 456 Mich 653, 663; 575 NW2d 745 (1998). Directed verdicts are appropriate only when no factual question exists with regard to which reasonable minds may differ. *Meagher, supra.*

Defendants argue that the trial court improperly granted plaintiff a directed verdict when a question of fact existed regarding the interpretation of a clause in the mortgage plaintiff held on the Hudson farm. The trial court concluded that the mortgage contained a

clear and unambiguous future advance clause. Defendants insist that the trial court erred in refusing to entertain parol evidence, which, they allege, would have shown that the parties did not intend the mortgage document to represent the complete integration of their agreement, and which would have clarified that the parties intended the mortgage to secure repayment of only the original mortgage principal amount, not any future advances. Defendants alleged that they had satisfied the original mortgage principal amount and therefore plaintiff's foreclosure on the Hudson farm was invalid if the mortgage did not also cover its subsequent loans to defendants.

While the trial court erred in neglecting to consider the documents executed by the parties contemporaneously with the mortgage for the purpose of determining whether the mortgage represented a complete integration of the parties' agreement, this error was harmless. A finding that the parties intended a written instrument to be a complete expression of their agreement concerning the matters covered is a prerequisite to the application of the parol evidence rule. *NAG Enterprises, Inc v All State Industries, Inc,* 407 Mich 407, 410; 285 NW2d 770 (1979). Extrinsic evidence of prior or contemporaneous agreements or negotiations is admissible as it bears on this threshold question whether the written instrument is such an integrated agreement. *Id.* In this case, the mortgage itself refers to supplementary documents evidencing plaintiff's September 1982 $15,000 loan to defendants:

IN CONSIDERATION of the loan(s) by [plaintiff] to [defendants], and to secure the repayment of the loan(s) made by [plaintiff] to [defendants] in the aggregate *principal sum of*

> $15,000.00, together with interest thereon, *evidenced by a Basic Loan Agreement between the parties or Promissory Note dated 9-3-82*[1] *and any Supplementary Loan Agreements or Promissory Notes (the Basic Loan Agreement, the Supplementary Loan Agreements and Promissory Notes are hereinafter collectively called "Loan Agreement"), and any renewals, extensions or modifications thereof, together with all other additional or future loans, advances or readvances heretofore or hereafter made by [plaintiff] to [defendants], together with interest thereon,* and to secure the performance and observance by [defendants] of each and every term, covenant, agreement and condition contained herein or in the Loan Agreement, [defendants] do[] hereby mortgage, warrant, grant, convey and assign unto [plaintiff] . . . the following described real estate. . . . [Emphasis added.]

Defendants thus correctly suggest that the trial court erred to the extent that it declined to review a loan application, two supplementary loan agreements, and a notice of defendants' right of rescission of the mortgage, executed together with the mortgage, to determine to what extent the parties intended the mortgage's terms to govern their agreement.

However, the trial court did not err in granting plaintiff's motion for a directed verdict because none of the contemporaneously executed documents cited by defendants contradicted the mortgage's language regarding future advances. The supplementary loan agreements executed with the mortgage address only various loan disbursement and repayment terms and

---

[1] The parties executed and recorded on June 20, 1985, a document entitled "Affidavit Correcting Mortgage." This affidavit provided that the September 3, 1982, date of the Basic Loan Agreement referenced in the mortgage was inaccurate and that the date should read April 30, 1984. This correction reflects the parties' execution of a new Basic Loan Agreement on April 30, 1984, but does not affect our instant analysis.

conditions. The notice of rescission acknowledges the mortgage transaction "dated September 3, 1982, in the amount of $15,050.00 between [plaintiff] and [defendants]," and informs defendants that they may rescind the mortgage within three business days. The loan application simply indicates that defendants wanted $15,000 in exchange for a mortgage, and proposes a repayment plan. While defendants claim that plaintiff's failure to check a box on the loan application marked "Open End" indicates that the parties did not intend the mortgage to secure future advances, absolutely nothing in either the loan application or the other contemporaneously executed documents referenced by defendants suggests the parties intended other than that the mortgage would secure future advances. The mortgage's language securing future advances is clear, unambiguous, and uncontradicted by these other documents. Therefore, we conclude that the trial court properly interpreted the language as a matter of law, *Meagher, supra* at 721, and properly granted plaintiff's motion for a directed verdict. *Id.* at 708 (directed verdict appropriate when no factual question exists).

Next, defendants raise several challenges to the trial court's setoffs against their damages awards. Plaintiff's cross appeal asserts that the trial court erred in denying its motions for judgment notwithstanding the verdict (JNOV) regarding the jury's verdicts for defendants. Because plaintiff's cross appeal raises issues dispositive of defendants' remaining arguments on appeal, we consider plaintiff's arguments first.

Plaintiff contends that the trial court erred in denying its motion for JNOV with regard to count I of

defendants' countercomplaint, which alleged that plaintiff, in bad faith, breached an agreement to lend defendants operating funds for the 1991 growing season. A motion for JNOV should be granted only when there was insufficient evidence presented to create an issue for the jury. *Pontiac School Dist v Miller, Canfield, Paddock & Stone*, 221 Mich App 602, 612; 563 NW2d 693 (1997), lv gtd in part 457 Mich 870 (1998). JNOV is improper where reasonable minds could differ with regard to issues of fact. *Michigan Microtech, Inc v Federated Publications, Inc*, 187 Mich App 178, 186; 466 NW2d 717 (1991). When deciding a motion for JNOV, a trial court must examine the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the nonmoving party. *McLemore v Detroit Receiving Hosp & Univ Medical Center*, 196 Mich App 391, 395; 493 NW2d 441 (1992). This Court reviews de novo the trial court's ruling on a motion for JNOV. *Meagher, supra.*

As a matter of law, defendants presented insufficient evidence from which a jury could have found that plaintiff, in bad faith, breached an agreement between the parties that it would finance defendants' 1991 farming operations. In October 1990, loan officers of plaintiff visited defendants' farm to contemplate restructuring defendants' outstanding debt. Conflicting testimony was presented at trial concerning the specificity and definiteness of plaintiff's alleged promise to lend 1991 operating funds. While lenders and borrowers frequently enter into preliminary discussions of whether a loan will be refinanced or further credit will be extended, neither general discussions of extending credit nor past renewals of credit should lead a borrower to reasonably believe

that credit will be extended or renewed again and again. *State Bank of Standish v Curry*, 442 Mich 76, 87; 500 NW2d 104 (1993) ("Nor does a course of past dealing where there has been a pattern of renewal in itself amount to sufficient assent to continue dealing or that renewal will be indefinite."). However, because in the context of reviewing plaintiff's motion for JNOV we must examine the evidence and all its legitimate inferences in defendants' favor, *McLemore, supra*, we conclude that defendants' testimony that plaintiff in October 1990 promised to lend 1991 operating funds to the defaulted defendants on the condition that defendants hold an equipment auction that raised at least $40,000 created an issue of fact for the jury regarding the existence of an agreement to lend. Although defendants did not state that the parties had agreed at the October 1990 meeting to any of the material terms required for the formation of a valid contract, including the amount of the loan, the interest rate, the method of repayment, or the collateral securing the loan, *id.* at 88, we will assume that the jury derived these terms from the parties' controlling Basic Loan Agreement and prior course of dealing, and, in the context of this motion for JNOV, we will defer to the jury's conclusions regarding these matters.

However, even assuming that the essential terms of the alleged agreement could be substantiated from the parties' Basic Loan Agreement and course of dealing or lending history, defendants' claim that plaintiff, in bad faith, refused to advance 1991 operating funds must still fail as a matter of law. The Basic Loan Agreement governing the parties' various supplemental loans and disbursements, dated November 20,

1986, clearly authorizes plaintiff, in the event of defendants' default, to refuse to lend or disburse additional money.

*3.4 Conditions for Loans and Disbursements*

Each of the following provisions shall condition the obligation of [plaintiff] to make loans and Loan Disbursements hereunder:

A. [Plaintiff] has the right to review the loan eligibility and credit worthiness of [defendants] before each loan and Loan Disbursement requested. If as the result of such review [plaintiff] deems itself insecure, or if it would become insecure by such loan or Loan Disbursement, then in [plaintiff]'s sole discretion, it need not make any further loan or Loan Disbursement hereunder.

\*          \*          \*

*6.0 Default*

The occurrence of any of the following shall constitute a default by [defendants] in all loans outstanding hereunder which shall authorize and permit [Plaintiff] to (a) demand immediate payment of all Indebtedness hereunder, (b) refuse further loans and/or Loan Disbursements . . . .

A. Failure of [defendants] to comply with or perform any of the terms and conditions contained herein or in any mortgage, pledge, security agreement, SUPPLEMENTARY LOAN AGREEMENT or other written document executed by [defendants] in connection herewith . . . .

\*          \*          \*

C. If [defendants] fail[] to pay all Indebtedness as and when demanded by [plaintiff] . . . .

D. If [defendants] [are] in default in any Indebtedness to [plaintiff] under any loan not otherwise governed by the terms hereof.

\*          \*          \*

F. If [plaintiff] should at any time in good faith deem itself insecure.

Our review of the record indicates that by 1990 and 1991 defendants had undisputedly defaulted on outstanding loans, having missed payments on separate loan obligations despite several repayment extensions granted by plaintiff. Defendants had outstanding debt in October 1990, at the time plaintiff allegedly promised to supply defendants' 1991 operating funds. According to the parties' supplementary loan agreements of record, by the beginning of 1991 defendants owed $79,692.50 plus interest on loan #10003. Defendants also owed by the beginning of 1991 approximately $200,000 on loan #20001, the entirety of which had come due earlier in 1990 when defendants defaulted on an outstanding installment. In November 1990, plaintiff had granted defendants extensions on the repayments of loans #10003 and #20001, requiring payments of $89,440.88 on loan #10003 and $75,060.81 on loan #20001 by February 1, 1991. Defendants failed to make these payments. Thus, whatever the agreement regarding operating funds plaintiff may have made with defendants in October 1990, plaintiff's refusal to lend or disburse 1991 operating funds was a proper exercise of a bargained-for right under the parties' Basic Loan Agreement, ¶ 6.0. No applicable law would obligate plaintiff to advance defendants further operating funds despite defendants' repeated breaches of their repayment obligations, breaches occurring both before and after plaintiff's alleged promise to lend 1991 operating funds. In our view, plaintiff has not assumed a duty to continually and endlessly fund defendants' operations. To perpetually

bind a lender to the borrower in this manner, despite the lender's clear denial of the assumption of such a responsibility, would certainly discourage the practice of financing, and we decline to impose this perpetual obligation on plaintiff when the parties' contract clearly provides that they intended otherwise. Thus, because defendants had undisputedly defaulted on outstanding loans, the clear and unambiguous terms of the parties' agreement relieved plaintiff of any obligation to lend defendants further operating funds for 1991.

Additionally, given defendants' extreme debt and default, plaintiff's 1991 refusal to provide further operating funds cannot as a matter of law constitute bad faith. See *Commercial Union Ins Co v Liberty Mut Ins Co*, 426 Mich 127, 136-137; 393 NW2d 161 (1986) (Good-faith denials, offers of compromise, or other honest errors of judgment are not sufficient to establish bad faith. Further, claims of bad faith cannot be based on negligence or bad judgment, as long as the actions were made honestly and without concealment. Bad faith is reflected by conduct that is arbitrary, reckless, indifferent, or that intentionally disregards the interests of the person to whom a duty is owed.). In light of defendants' growing debt and missed repayments, plaintiff's denial to advance more funds cannot be considered arbitrary. Because plaintiff's refusal to loan further funds does not constitute bad faith as a matter of law, the jury should not have been permitted to address count I of defendants' countercomplaint.

Plaintiff next argues that the trial court erred in denying its motion for JNOV regarding count II of defendants' countercomplaint, which alleged that

plaintiff, in bad faith, refused to remit a portion of a crop-proceeds check, in which plaintiff held a security interest, to the Federal Land Bank to satisfy a mortgage payment owed by defendants. Plaintiff applied $71,191.54 of the $83,000 crop-proceeds check, which was made payable to plaintiff and defendants jointly, as repayment of the entire principal and interest balance on defendants' 1989 operating loan, for which loan the crop proceeds constituted collateral. As a matter of law, plaintiff's refusal to relinquish its bargained-for rights in collateral does not qualify as bad faith.

> The duty of good faith imposed upon contracting parties does not compel a lender to surrender rights which it has been given by statute or by the terms of its contract. Similarly, it cannot be said that a lender has violated a duty of good faith merely because it has negotiated terms of a loan which are favorable to itself. As such, a lender generally is not liable for harm caused to a borrower by refusing to advance additional funds, release collateral, or assist in obtaining additional loans from third persons. [*Creeger Brick & Building Supply, Inc v Mid-State Bank & Trust Co*, 385 Pa Super 30, 36-37; 560 A2d 151 (1989).]

See also *Van Arnem Co v Manufacturers Hanover Leasing Corp*, 776 F Supp 1220, 1223 (ED Mich, 1991) (A line of credit lender is not by definition "the borrower's fiduciary. The lender remains entitled to advance its own interests by enforcement of contract terms, and is not required to forego enforcement of contract terms to put the borrower's interests ahead of its own."); *Price v Wells Fargo Bank*, 213 Cal App 3d 465, 479; 261 Cal Rptr 735 (1989) (Where the appellants argued "that the bank owed them a duty of reasonable forbearance in enforcing its creditor's

remedies," the court found no authority supporting the appellants' argument and explained that "[c]ontracts are enforceable at law according to their terms. The covenant of good faith . . . does not impose any affirmative duty of moderation in the enforcement of legal rights."). Thus, we conclude that the trial court erred in denying plaintiff's motion for JNOV with regard to count II of defendants' counterclaim.[2]

Assuming arguendo that a valid contract to lend 1991 operating funds existed, that plaintiff, in bad faith, breached its obligation to lend, and that plaintiff, in bad faith, refused to relinquish collateral, we agree with plaintiff that defendants absolutely failed as a matter of law to establish support for the jury's awards of damages resulting from plaintiff's actions. The parties agreed at trial that defendants' claims of breach of good faith were contractual in nature. Damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the con-

---

[2] The record contains an April 14, 1989, supplementary loan agreement covering a $50,532.50 operating loan (denominated as loan #2) disbursement that requires this amount plus interest be repaid by February 1, 1990. However, a December 31, 1989, statement of defendants' accounts reflects a balance for loan #2 of $66,246.50, indicating that defendants borrowed more operational funds for 1989 than reflected in the April 14 supplementary loan agreement. Although the record was unclear regarding on what specific date loan #2's balance above $50,532.50 plus interest was due, as discussed above, we find that plaintiff did not act in bad faith in utilizing its collateral to satisfy in its entirety defendants' 1989 operating loan. Furthermore, a November 30, 1989, supplementary loan agreement shows that defendants also owed as of January 1, 1990, a $20,000 plus interest payment on the $195,188.65 balance of their capital loan (loan #20001). Therefore, because the $83,000 crop-proceeds check was insufficient to satisfy all of defendants' loan obligations, plaintiff exercised sound lending practice in refusing to advance $10,000 to the Federal Land Bank.

tract was made. *Kewin v Massachusetts Mut Life Ins Co*, 409 Mich 401, 414; 295 NW2d 50 (1980). Application of this principle in the commercial contract situation generally results in a limitation of damages to the monetary value of the contract had the breaching party fully performed under it. *Id.* at 414-415.

Regarding plaintiff's alleged failure to lend, defendants did not establish that this failure resulted in damages amounting to the $315,000 that the jury awarded. A party to a contract who is injured by another's breach of the contract is entitled to recover from the latter damages for only such injuries as are the direct, natural, and proximate result of the breach. *Stewart v Rudner*, 349 Mich 459, 468-469; 84 NW2d 816 (1957). Defendants admitted that they obtained alternate financing for their 1991 farming operations from a neighbor. Therefore, plaintiff's alleged failure to lend did not proximately result in defendants suffering any damages beyond whatever limited, incidental expense they incurred in securing the alternate financing, and certainly no damages remotely approaching the $315,000 awarded by the jury.

Regarding plaintiff's alleged bad-faith refusal to surrender its collateral to the Federal Land Bank, defendants also failed to introduce support for the jury's verdict awarding them damages of $500,000 on this count. The Federal Land Bank extended until February 1, 1991, the due dates of both defendants' January 1, 1990, and January 1, 1991, mortgage payments, but defendants still failed to make the payments. Thus, where defendants' own inaction intervened, no legal causation exists between plaintiff's refusal and the eventual foreclosure on defendants' property. Furthermore, defendants admitted that they

could have borrowed money and paid the Federal Land Bank themselves. Therefore, defendants' failure to mitigate any damages allegedly caused by plaintiff's refusal also precludes the jury's $500,000 award of damages. See *M & V Barocas v THC, Inc*, 216 Mich App 447, 449; 549 NW2d 86 (1996) (It has long been recognized that the law should encourage a potential plaintiff to take reasonable actions to minimize the extent of damages arising from the wrongful breach of a contract.). As the Michigan Supreme Court long ago explained, "The law is well settled that a case should not be submitted to the jury where a verdict must rest upon a conjecture or guess." *Scott v Boyne City, G & A R Co*, 169 Mich 265, 272; 135 NW 110 (1912). Because the jury was permitted in the instant case to speculate regarding the existence of a contract, whether plaintiff acted in bad faith or illegally, and regarding the amount of damages defendants allegedly suffered, we conclude that the trial court erred in denying plaintiff's motions for JNOV regarding counts I and II of defendants' countercomplaint.

Plaintiff further challenges the trial court's denial of its motion for JNOV regarding count VI of defendants' countercomplaint alleging that plaintiff owed defendants a fiduciary duty and breached it by refusing defendants' request that it remit crop proceeds to the Federal Land Bank. A fiduciary relationship, which generally does not arise within the lender-borrower context, exists when there is a reposing of faith, confidence, and trust and the placing of reliance by one on the judgment and advice of another. *Ulrich v Federal Land Bank of St Paul*, 192 Mich App 194, 196-197; 480 NW2d 910 (1991); *Smith v Saginaw Savings & Loan Ass'n*, 94 Mich App 263, 274; 288 NW2d 613

(1979). The mere facts that plaintiff as the lender maintained control over the terms of defendants' loan repayment or participated in discussions regarding what crops to grow and how much money defendants would need to borrow at various times are insufficient as a matter of law to establish a fiduciary relationship between plaintiff lender and defendant borrowers. See *Ulrich, supra* (The borrower's allegations of inexperience and reliance on the lender are insufficient to establish a fiduciary relationship.). The testimony of plaintiff's former loan officer and defendants revealed that defendants exercised ultimate control over the operation of their farm, including determining what land to rent and purchase, what equipment to purchase, in what land to plant crops, the nature and amount of each crop to grow, when and to whom to sell the crops, and other business-related decisions, and that no profit-sharing occurred between defendants and plaintiff. Because the record reflects no evidence supporting the existence of a fiduciary relationship between plaintiff and defendants beyond the ordinary lender-borrower relationship, the trial court should have granted plaintiff's motion for JNOV regarding this claim.

Plaintiff finally claims that the trial court should have additionally granted its motion for JNOV regarding defendants' claim that plaintiff by duress obtained a mortgage on one of defendants' farms. This Court has explained that

> [t]o succeed with respect to a claim of duress, [defendants] must establish that they were illegally compelled or coerced to act by fear of serious injury to their persons, reputations, or fortunes. "Fear of financial ruin alone is insufficient to establish economic duress; it must also be established that

the person applying the coercion acted unlawfully."
[*Enzymes of America, Inc v Deloitte, Haskins & Sells*, 207
Mich App 28, 35; 523 NW2d 810 (1994), rev'd in part on
other grounds 450 Mich 889 (1995) (citations omitted).]

Because defendants have not alleged that plaintiff
acted illegally, their claim of duress is meritless, and
we conclude that the trial court erred in allowing it to
proceed to the jury.

Given our conclusion affirming the trial court's
grant of plaintiff's motion for a directed verdict
regarding count V of defendants' countercomplaint,
and our conclusions reversing the trial court's denials
of plaintiff's motions for a directed verdict regarding
counts I, II, VI, and VII of defendants' countercom-
plaint, we need not reach defendants' various remain-
ing allegations that the trial court erred in calculating
setoffs to their jury awards. We simply note the fol-
lowing in response to defendants' argument that the
trial court erred in determining that a breach of con-
tract by plaintiff lender that caused defendants to
lose certain property would entitle defendants to
recover only the amount of their loss of equity in the
property—the property's market value on the foreclo-
sure date less expenses saved because of foreclosure.
*United California Bank v Prudential Ins Co of
America*, 140 Ariz 238, 295-296, 308-309; 681 P2d 390
(1983). While "[t]he traditional measure of damages
for breach of a contract to loan money is the addi-
tional interest required for a replacement loan. . . .
[T]his measure has been broadened to include loss of
equity if the breach of the loan agreement caused the
borrower to lose ownership of its assets." *Id.* at 295-
296.

It is only "the actual loss" in the given case that can be recovered by the landowner. That measures the amount of his damages. Where there is a lien indebtedness against the land the indebtedness must be taken into consideration in determining the amount of "actual loss" the landowner sustained at the time the title was lost. The landowner, owing such lien indebtedness, must pay it, and is bound to pay it. He is not legally relieved of its final payment by the mere act of the party defaulting in lending the money to discharge the lien indebtedness. Consequently, in such cases, the measure of liability is the difference in the lien indebtedness, principal and interest, and the value of the land at the time it is lost by reason of foreclosure of such lien. It is the landowner's interest in the land, represented by the value of his equity, that he would be entitled to as compensation. For legally the value of the equity is his only "actual loss." [*FB Collins Inv Co v Sallas*, 260 SW 261, 265 (Tex App, 1924).]

See also *Lincor Contractors, Ltd v Hyskell*, 39 Wash App 317, 321-322; 692 P2d 903 (1984) (financing company's refusal to lend entitled property owner to recover value of its equity in building); *St Paul at Chase Corp v Manufacturers Life Ins Co*, 262 Md 192, 241-244; 278 A2d 12 (1971) (breaching party's refusal to finance entitled property owner to recover for loss of equity, but because owner had no equity it could recover no damages for loss of building).

Defendants additionally challenge the trial court's decision to award plaintiff attorney fees and costs, alleging that plaintiff should not be entitled to fees and costs when it breached its contractual duties. However, in light of our conclusions reversing the jury's verdicts for defendants, defendants' argument is without merit. Furthermore, in stipulating judgment for plaintiff on its complaint, defendants on the record agreed that plaintiff would receive attorney

fees in an amount to be later determined by the trial court. Because error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence, defendants have waived our review of this issue. *Phinney v Perlmutter*, 222 Mich App 513, 537; 564 NW2d 532 (1997).

Finally, defendants argue that several rulings of the trial court illustrate that it was biased against them. Our review of these various, brief contentions, however, reveals no improper actions taken by the trial court, and no unfair prejudice suffered by defendants.

Affirmed in part, reversed in part, and remanded for entry of judgment for plaintiff regarding counts I, II, VI, and VII of defendants' countercomplaint. We do not retain jurisdiction.

Doctoroff, J., concurred.

Jansen, P.J. (*concurring in part and dissenting in part*). I respectfully dissent from the majority's decision to reverse with regard to counts I, II, VI, and VII of defendants' countercomplaint and remand for entry of judgment in favor of plaintiff regarding those claims. I would affirm the jury's verdict and the trial court's rulings in all respects.

I agree with the majority with respect to defendants' issues on appeal to the extent that defendants have not raised any issue requiring reversal. Regarding the issue of setoff, I would find no error because the parties agreed on the record that the jury would be instructed that the trial court would set off any real estate liens on defendants' property from any award, and at the posttrial hearing, the trial court noted that the amount of the setoff represented supe-

rior or senior liens that would become plaintiff's liability.

With respect to the cross appeal, I respectfully dissent. I would hold that the trial court did not err in denying plaintiff's motion for judgment notwithstanding the verdict (JNOV) regarding count I (bad-faith breach of contract for failure of plaintiff to loan 1991 operating funds to defendants), count II (bad-faith breach of contract when plaintiff refused to surrender collateral proceeds to pay other of defendants' creditors), count VI (breach of fiduciary duty by plaintiff in failing to release collateral proceeds to tender payment on Federal Land Bank's mortgage), and count VII (duress by plaintiff in procuring the May 1990 mortgage on the Partaka farm) because there were factual questions for the jury to resolve. I do not believe that defendants' counterclaim is deficient as a matter of law as the majority apparently holds.

The standard of review for JNOV requires review of the evidence and all legitimate inferences in the light most favorable to the nonmoving party. *Orzel v Scott Drug Co*, 449 Mich 550, 557; 537 NW2d 208 (1995). Only if the evidence so viewed fails to establish a claim as a matter of law, should a motion for JNOV be granted. *Id.* at 558. I would find that defendants presented sufficient evidence to support each claim and that the majority is simply, and improperly, substituting its own judgment for that of the jury. See *McLemore v Detroit Receiving Hosp & Univ Medical Center*, 196 Mich App 391, 395; 493 NW2d 441 (1992).

With regard to count I, defendants alleged a bad-faith breach of an agreement to loan defendants operating funds for 1991. There was evidence that loan officers of plaintiff's office went to defendants' farm

in October 1990 and that the loan officers promised to grant a loan in the spring of 1991 if defendants agreed to hold an equipment auction and pay plaintiff $40,000. Defendants, in December 1990, sold certain machinery and paid plaintiff over $50,000 from the proceeds. Further, it was defendants' contention that the promise to loan additional money in the spring of 1991 falls within the Basic Loan Agreement. The terms of the Basic Loan Agreement clearly contemplate additional loans made in the future and specifically states that all loan applications and loans made in the future are covered by the terms of the Basic Loan Agreement. Therefore, the essential terms of the agreement to loan money for the spring of 1991 are covered by the Basic Loan Agreement. Additionally, defendants applied for an operating loan in 1990, which plaintiff approved and extended repayment dates on all outstanding debt.[1] Finally, even if the terms of the Basic Loan Agreement relieved plaintiff of any obligation to lend further operating funds in 1991, there was evidence that plaintiff had agreed to do so, even if not obliged to do so.

Accordingly, the jury could find that plaintiff, in bad faith, breached an agreement to loan defendants operating funds for 1991.

With respect to count II, defendants alleged a bad-faith breach of contract when plaintiff refused to surrender its collateral proceeds to pay other creditors of defendants. There was evidence that, in January 1990, Crystal Weldon instructed one of plaintiff's employees to apply $10,000 of a total check amount

---

[1] Even this fact is conceded in plaintiff's brief, as cross-appellant, at page six.

of $83,000 to a mortgage payment owed by defend-
ants to the Federal Land Bank. The majority holds
that plaintiff's refusal to relinquish its bargained-for
rights in collateral does not qualify as bad faith. How-
ever, the critical fact here is that the contract (the
April 19, 1989, supplementary loan agreement)
required a payment of $50,532 principal on the operat-
ing note, and plaintiff applied $66,246.50 to pay the
principal on that note. Thus, the check for $83,000
covered the amount that defendants owed on the con-
tract to plaintiff, and covered the additional $10,000
that defendants asked be applied to the mortgage
with the Federal Land Bank. Moreover, defendants
did not discover until several months after instructing
plaintiff to apply $10,000 toward the mortgage that
plaintiff did not do so. Accordingly, the jury could
find that plaintiff, in bad faith, breached a contract
when it failed to apply $10,000 toward the mortgage
as instructed by defendants.

Further, there was sufficient evidence presented to
find that the failure to apply the $10,000 toward the
mortgage with the Federal Land Bank caused dam-
ages in the amount the jury awarded, $500,000.
Because the $10,000 was not applied toward the mort-
gage, the mortgage was foreclosed and the Caskey
farm was later sold to a third party. The loss of the
Caskey farm included the loss of crop income derived
from the farm as testified to by Major Weldon. Thus,
there is evidence supporting the jury's finding of cau-
sation between the breach and defendants' damages.

With respect to count VI, defendants alleged breach
of a fiduciary duty by plaintiff in failing to release its
collateral proceeds (the $10,000) toward the mortgage
with the Federal Land Bank. Defendants note that

there is a power of attorney, dated July 6, 1988, in which the Farm Credit Bank of St. Paul granted agent and attorney-in-fact status to plaintiff. Other evidence in this regard is that paragraph 3.1 of the Basic Loan Agreement states that plaintiff "is unwilling and unable to lend money without retaining ultimate control of the repayment requirements." There was other testimony from Crystal Weldon that she, her husband, and Per Peterson (plaintiff's loan officer) decided together what crops would be grown, as well as other financial decisions. Peterson, as well, testified that he and defendants would mutually decide how much money would be needed for operations and machinery, and admitted that defendants were relying on him to sit down with them and discuss what was happening and bring any problems to their attention.

Under these circumstances, I would hold that the jury could properly determine that there was a fiduciary relationship because there was a reposing of faith, confidence, and trust and a placing of reliance by defendants on the judgment and advice of plaintiff.

With respect to count VII, there is no need to address this issue because the trial court set aside the jury's verdict for defendants in the judgment, finding that the relief sought by defendants in this count was inconsistent with the relief defendants sought and the verdict rendered by the jury. Further, contrary to defendants' argument, it was not error for the trial court to set aside the jury's verdict regarding count VII because this effectively validated plaintiff's mortgage on the Partaka farm and its purchase price of the premises at the foreclosure sale, thus reducing defendants' debt.

As its final argument, plaintiff contends that the damages awarded defendants are excessive, contrary to contract law, and against the great weight of the evidence. I disagree. Once injury is proved, recovery is not precluded simply because proof of the amount of damages is not mathematically precise. *Godwin v Ace Iron & Metal Co*, 376 Mich 360, 368; 137 NW2d 151 (1965). Further, where reasonable minds could differ regarding the level of certainty to which damages have been proved, this Court is careful not to invade the fact finding of the jury and substitute its own judgment. *Severn v Sperry Corp*, 212 Mich App 406, 415; 538 NW2d 50 (1995). Finally, where, the award "falls reasonably within the range of evidence and within the limits of what reasonable minds would deem just compensation for the injury sustained, the award should not be disturbed." *Frohman v Detroit*, 181 Mich App 400, 415; 450 NW2d 59 (1989). Here, the award falls within the range of evidence, is not excessive, and is not contrary to contract law.

I would affirm the trial court's final judgment in all respects.