*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CRYSTAL FOX,

      Plaintiff-Appellant,

UNPUBLISHED
March 30, 2023

v

No. 360165
Macomb Circuit Court
Family Division

CHRISTOPHER DAVID SIMS,

LC No. 2021-007857-DM

      Defendant-Appellee.

Before: PATEL, P.J., and SWARTZLE and HOOD, JJ.

PER CURIAM.

In this divorce action, plaintiff, Crystal Fox, appeals as of right the trial court's judgment of divorce. The trial court abused its discretion by failing to enter a signed consent judgment of divorce as it was written, and instead altering its terms without a sufficient basis. But it did not err when it declined to award child support retroactively from the time the divorce action was filed. We, therefore, affirm in part and reverse in part.

## I. BACKGROUND

This case arises out of a divorce proceeding that Fox filed in March 2021. Fox and defendant, Christopher David Sims, married in 2017. They have one child together who was born in 2011. They separated in December 2020, and Fox filed a complaint for divorce in March 2021. The trial was scheduled for November 18, 2021.

At a settlement conference in September 2021, the parties and their attorneys negotiated a settlement agreement that appeared to resolve all issues in the case. They memorialized the settlement terms in a consent judgement of divorce that both parties and their attorneys signed on November 17, 2021. At the same time, the parties stipulated to adjourn the trial date from November 18, 2021, to November 30, 2021.

On November 30, 2021, the parties appeared to place proofs on the record and enter the consent judgment of divorce that they previously negotiated. During the hearing, Sims's counsel indicated that Sims did not agree with certain financial terms in the consent judgment. He admitted

that he and Sims signed the consent judgment of divorce, but claimed he, Sims's counsel, signed it under duress. Specifically, Sims's counsel claimed that he mistakenly believed that the trial, which was originally scheduled for November 18, 2021, was to be held by Zoom. He had scheduled to take his daughter to college out of the state on November 18, 2021, and therefore, could not attend trial in person that day. Sims's counsel claimed that Fox's counsel would not agree to reschedule the trial until he signed the consent judgment of divorce. He claimed that this amounted to duress. Sims never indicated that he signed the document under duress. And there is no record of Sims or his counsel filing a motion to adjourn the trial date, separate from the requested stipulation.

Sims's only objections to the terms of the consent judgment were that he did not receive compensation for his claimed interest in a 2017 Chevrolet Suburban (worth approximately $37,000), and that he did not receive half of the marital share of Fox's pension and 401(k). In addition to the 2017 Chevrolet Suburban, the parties owned a Chrysler 300, which was not operational.

Following discussion of the marital vehicles, the trial court began to take proofs necessary for a *pro confesso* hearing. After taking some basic proofs, the trial court informed Fox's counsel that they were "in trial now," but did not clearly state that it was setting aside the consent judgment of divorce, the basis for that decision, or what issues the parties were litigating. Both sides presented evidence, but the trial court did not make findings regarding duress or the validity of the consent judgment. Aside from stating at the beginning of the hearing that the consent judgment "was at gunpoint," the trial court did not comment on the validity of the consent judgment or clearly state why it did not accept it.

At the end of the trial, the trial court concluded that Fox had no retirement accounts. The trial court then awarded Sims the Chrysler 300 and Fox the 2017 Chevrolet Suburban. It also awarded Sims "[$]750 in the settlement as a value toward the [Chevrolet Suburban]."

In response to the $750 award for the Suburban, Fox's counsel requested that the trial court instead award child support retroactively. By starting Sims "two months behind on the child support," Fox would not have to pay out of pocket for Sims's interest in the Suburban. She argued that she could have claimed child support payments retroactively from the time she filed the case.[1] The trial court declined Fox's request to award child support retroactively from the date of filing and did not change the $750 award for the Suburban.

The trial court entered the judgment of divorce and uniform child support order in January 2022. The judgment of divorce was almost identical to the consent judgment of divorce. The only

---

[1] In 2011, before the parties were married, Sims was ordered to pay child support in a paternity suit in another county. See Wayne Circuit Court Case No. 11-166530-DP. The parties presented conflicting evidence on whether Sims was still required to pay child support at the time of the divorce, whether he paid while the parties were married, and whether there were arrears. Sims insisted that he was current on child support payments, and that the support payments came directly from his paycheck. Fox testified that she had not received support in years.

meaningful difference was that Sims was specifically awarded the Chrysler 300 and $750 for his share of the Chevrolet Suburban. This appeal followed.

## II. FAILURE TO ENTER CONSENT JUDGMENT OF DIVORCE

Fox argues that the trial court abused its discretion by not entering the consent judgment of divorce as written and clearly erred when it found that Sims and his counsel entered the consent judgment under duress. We agree.

We review a trial court's findings related to the validity of a consent agreement at divorce for abuse of discretion, but we review a trial court's factual findings for clear error. *Vittiglio v Vittiglio*, 297 Mich App 391, 400; 824 NW2d 591 (2012). An abuse of discretion occurs when the "trial court's decision is outside the range of reasonable and principled outcomes." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). Clear error occurs when we are left with a "definite and firm conviction that a mistake has been made, giving due regard to the trial court's special opportunity to observe the witnesses." *Smith v Smith*, 278 Mich App 198, 204; 748 NW2d 258 (2008) (citation omitted). Contract interpretation is also a question of law; questions of law are reviewed de novo. *Sweebe v Sweebe*, 474 Mich 151, 154; 712 NW2d 708 (2006). "While what constitutes duress is a question of law, whether duress exists in a particular case is a question of fact." *Clement v Buckley Mercantile Co*, 172 Mich 243, 253; 137 NW 657 (1912).

The Michigan Court Rules unambiguously provide that agreements "made in open court" or "in writing" are binding on the parties. See MCR 2.507(G). See also MCR 3.216(H)(8) (providing that mediated settlement agreements in domestic relations cases are binding if "reduced to a signed writing by the parties" and requiring the parties to "take steps necessary to enter the judgment as in the case of other settlements."). A court is likewise "bound by property settlements reached through negotiations and agreement by parties to a divorce action, in the absence of fraud, duress, mutual mistake, or severe stress which prevented a party from understanding in a reasonable manner the nature and effect of the act in which she was engaged." *Vittiglio*, 297 Mich App at 400 (quotation marks and citation omitted). Therefore, "[c]ourts must uphold divorce property settlements reached through negotiation and agreement of the parties because modifications of property settlements in divorce judgments are disfavored." *Id*. at 399 (citation omitted).

"Consent judgments of divorce are contracts and treated as such." *Andrusz v Andrusz*, 320 Mich App 445, 452; 904 NW2d 636 (2017) (citation omitted). Like all contracts, consent judgments that are unambiguous are not open to interpretation, and they must be enforced as written. *Lentz v Lentz*, 271 Mich App 465, 472; 721 NW2d 861 (2006) (citation omitted). This rule is designed to protect the individual freedom to enter into contracts and arrange one's own affairs. *Id*. (citation omitted). "[A] consent judgment can only be modified with the consent of the parties, at least in the absence of fraud, mistake, illegality, or unconscionability." *Andrusz*, 320 Mich App at 453 (citations omitted). The trial court, however, may "fill voids in an incomplete consent judgment, and in so doing must balance the equities insofar as is possible under the circumstances." *Id*. A contract is ambiguous, and may be interpreted by a court, when the provisions in a contract "can be reasonably understood as meaning different things . . . ." *Id*. (citation omitted).

A consent judgment may be voided if a party signed it while under duress. But for a party to prove that he was under duress when he entered into an agreement, he must establish that he was afraid of serious injury to his person, reputation, or fortune, and that he was illegally coerced or compelled to act by virtue of that fear. See *Farm Credit Servs of Michigan's Heartland, PCA v Weldon*, 232 Mich App 662, 681-682; 591 NW2d 438 (1998). "Th[e] pressure to settle is not, by itself, coercion." *Vittiglio*, 297 Mich App at 402.

Here, the trial court never made a finding that Sims or his counsel signed the settlement under duress, and there was no evidence to support such a finding. Sims's counsel claimed that the consent judgment was signed under duress because he made a scheduling error that would have prevented him from attending trial, and opposing counsel would not consent to postponing trial until he signed the consent judgment. The trial court seemed to accept this argument, stating that the consent judgment was signed "at gunpoint." But there was never an explanation for why Sims (as opposed to his counsel) signed the consent judgment, or any evidence that Sims's counsel pressured or coerced him to sign it. Again, to establish that someone was under duress when signing a consent judgment, it must be established that he or she was in fear of serious injury to his or her person, reputation, or fortune, and that the fear was induced by unlawful action. *Weldon*, 232 Mich App at 681-682. There is no indication that Fox, or Fox's counsel, acted unlawfully by refusing to postpone the trial. Their refusal to consent to postponing the trial merely added pressure to settle. But, standing alone, pressure to settle is not coercion. *Vittiglio*, 297 Mich App at 402.

Further, Sims's counsel had many other options available to him besides signing the consent judgment. He could have canceled his competing plans and made other arrangements for his daughter to get to school, arranged for another attorney to stand in for him, or requested that the court change the trial date without Fox's consent. There is no indication that Sims's counsel (or Sims) was in serious fear for the safety of his person, reputation, or fortune. There is no evidence that the consent judgment was signed under duress.

Because there is no evidence that Sims or his counsel signed the consent judgment under duress, and there was no other basis to set aside the consent judgment (such as fraud, mutual mistake, or severe stress) the trial court was required to enter the consent judgment as written. *Vittiglio*, 297 Mich App at 400. The terms of the consent judgment could have been interpreted by the trial court, however, if they were ambiguous, and terms could have been added by the trial court if the consent judgment was incomplete. *Lentz*, 271 Mich App at 472-473.

Here, the consent judgment stated that Sims "is awarded the [Vehicle make, model, year, and VIN], for [his/her] exclusive use, ownership, and possession free and clear from any claim of Plaintiff, and Defendant shall indemnify and hold Plaintiff harmless from any further liability." This provision was inherently ambiguous because it states that Sims was awarded a vehicle, but does not state which vehicle he was awarded. Therefore, the trial court had the ability to interpret that language. The trial court arguably did so when it awarded Sims the Chrysler 300. The trial court went further than simply interpreting the provision, however, when it awarded Sims an additional $750 for his share of the Chevrolet Suburban. Therefore, the trial court abused its discretion by failing to enter the signed consent judgment of divorce as it was written. We reverse and remand for the trial court to enter the consent judgment as written or make adequate findings that would support its decision to set aside an otherwise valid consent judgment.

### III. RETROACTIVE CHILD SUPPORT

Fox argues that the trial court abused its discretion when it held that Sims did not have to pay child support retroactively from the date the divorce proceeding was filed, and instead child support payments would start on the day the trial was held. We disagree.

We review child support orders for an abuse of discretion. *Butler v Simmons-Butler*, 308 Mich App 195, 224-225; 863 NW2d 677 (2014). An abuse of discretion occurs when "the outcome is not within the range of principled outcomes." *Id.* at 225.

Fox claims that she could have requested child support through the Family Support Act, MCL 552.459 *et seq*., when she was no longer living with Sims, but that a support action under that act cannot run simultaneously with a divorce action. She further claims that it is unfair to deny her child support retroactively from the time the complaint was filed because it would be punishing her for filing for divorce and not filing under the Family Support Act instead. MCL 552.452(1) states that a child support obligation under the Family Support Act is "retroactive to the date that the complaint for support was filed."

Fox is correct that an individual may not request child support under the Family Support Act during a divorce action. See MCL 552.451. But, separate from the Family Support Act, an individual who is in a pending divorce proceeding can still request child support under other statutory authority. See MCL 552.15(1). MCL 552.15(1) provides:

> After the filing of a complaint in an action to annul a marriage or for a divorce or separate maintenance, on the motion of either party or the friend of the court, or on the court's own motion, the court may enter orders concerning the care, custody, and support of the minor children of the parties during the pendency of the action as prescribed in section 5 of the support and parenting time enforcement act, 1982 PA 295, MCL 552.605, and as the court considers proper and necessary. Subject to section 5b of the support and parenting time enforcement act, 1982 PA 295, MCL 552.605b, the court may also order support as provided in this subsection for the parties' children who are not minor children.

Fox, therefore, could have requested child support during the pendency of the action, but she failed to do so. While it is true she requested that the trial court order Sims to pay child support in her complaint for divorce, her request was not a request for an interim or temporary support order during the pendency of the action. Instead, it was a request that child support be awarded in the judgment of divorce. Rather, Fox waited until trial to request that she receive child support payments retroactively from the time she filed her complaint for divorce and only in response to, or to offset, the trial court's order related to Sims's interest in one of the vehicles.

MCL 552.603(2) states:

> Except as otherwise provided in this section, a support order that is part of a judgment or is an order in a domestic relations matter is a judgment on and after the date the support amount is due as prescribed in [MCL 522.605c], with the full force, effect, and attributes of a judgment of this state, *and is not, on and after the*

*date it is due, subject to retroactive modification*. No additional action is necessary to reduce support to a final judgment. Retroactive modification of a support payment due under a support order is permissible with respect to a period during which there is pending a petition for modification, but only from the date that notice of the petition was given to the payer or recipient of support. [Emphasis added.]

Because the child support order in this case was part of the judgment of divorce, MCL 552.603(2) controls. The child support order became effective on the date the judgment of divorce was entered, and it could not be applied retroactively to the date Fox filed her complaint for divorce. The trial court did not abuse its discretion by failing to award child support retroactively from the time the case was filed; it was not permitted to do so under MCL 552.603(2).

## IV. CONCLUSION

For the reasons stated above, we reverse in part, affirm in part, and remand for further proceedings consistent with this opinion. We reverse the judgment of divorce based on the trial court's failure to enter the consent judgment as written or make adequate findings that would support its decision to set aside an otherwise valid consent judgment. We affirm the trial court's child support order, including its denial of Fox's request for retroactive support. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Brock A. Swartzle
/s/ Noah P. Hood

-6-