*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

CAN IV PACKARD SQUARE, LLC,

Plaintiff/Counterdefendant-
Appellee,

v

PACKARD SQUARE, LLC,

Defendant/Counterplaintiff-
Appellant,

and

BELDEN BRICK SALES CO., C.E. GLEESON CONSTRUCTORS, INC., CITY ELECTRIC SUPPLY COMPANY, QUANDEL CONSTRUCTION SERVICES OF MICHIGAN, INC., also known as QUANDEL CONSTRUCTION GROUP, INC., JOHN DOES 1-100, GAYLOR ELECTRIC, INC., ASSEMBLERS PRECASE & STEEL SERVICES, INC., STETSON BUILDING PRODUCTS, ALLIED BUILDING PRODUCTS CORP., AMTHOR STEEL, CONSTRUCTION AHEAD, INC., D&V EXCAVATING, E.L. PAINTING CO., E.L.S. CONSTRUCTION, INC., EVERGREEN CIVIL, LLC, HARNISH FIREPROOFING, LLC, JACKIE'S TRANSPORT, INC., JERMOR PLUMBING & HEATING, INC., JCS CONSTRUCTION, INC., MASONRY DEVELOPERS, INC., MICHIGAN WOODWORK, LLC, R.A.M. CONSTRUCTION SERVICES OF MICHIGAN, INC., SHARON'S HEATING & AIR CONDITIONING, INC., SUMMIT BUILDING SERVICES, LLC, WELLING, INC., and ZEELAND LUMBER AND SUPPLY CO.,

Defendants.

UNPUBLISHED
June 24, 2021

Nos. 348857; 350519
Washtenaw Circuit Court
LC No. 16-000990-CB

Before: GADOLA, P.J., and BORRELLO and M.J. KELLY, JJ.

PER CURIAM.

In Docket No. 348857, defendant/counterplaintiff, Packard Square, LLC,[1] appeals as of right a February 15, 2019 order granting plaintiff/counterdefendant, Can IV Packard Square, LLC's motion for summary disposition on defendant's counterclaims, in this action filed by plaintiff to foreclose a mortgage on a mixed-use commercial development construction project with respect to which defendant was the borrower and plaintiff was the lender. In Docket No. 350519, defendant appeals as of right a July 11, 2019 order approving the court-appointed receiver's final report, discharging the receiver's bond, and discharging the receiver. The appeals were consolidated. *Can IV Packard Square, LLC v Packard Square, LLC*, unpublished order of the Court of Appeals, entered December 10, 2019 (Docket No. 348857); *Can IV Packard Square, LLC v Packard Square, LLC*, unpublished order of the Court of Appeals, entered December 10, 2019 (Docket No. 350519). We affirm.

## I. PROCEDURAL BACKGROUND

In a prior appeal in this case, this Court issued an unpublished, per curiam opinion that summarized the underlying facts and procedural history up to that point. See *Can IV Packard Square, LLC v Packard Square, LLC*, unpublished per curiam opinion of the Court of Appeals, issued January 23, 2018 (Docket No. 335512), pp 1-4. "Plaintiff commenced this action to foreclose a mortgage defendant granted on a mixed-use commercial development construction project after defendant failed to substantially complete the project, despite having been given several extensions of construction deadlines." *Id*. at 1. The trial court appointed a receiver after defendant defaulted on the project in numerous respects, and this Court affirmed the appointment of the receiver. *Id*. at 4, 11. Later, the trial court granted summary disposition to plaintiff on its foreclosure claim, a judgment of foreclosure was entered, and plaintiff purchased the property at a sheriff's sale with a credit bid of $75 million. Defendant filed an appeal from the judgment of foreclosure, but this Court dismissed that appeal as moot because defendant had failed to redeem the property within the redemption period as provided in MCL 600.3140. See *Can IV Packard Square, LLC v Packard Square, LLC*, 328 Mich App 656, 658, 666; 939 NW2d 454 (2019).

Meanwhile, defendant asserted numerous counterclaims against plaintiff. The trial court granted summary disposition to plaintiff on the counterclaims. The trial court later granted the receiver's motion to discharge the receiver. These appeals followed.

---

[1] We will refer to Packard Square, LLC, as "defendant" because the other defendants listed in the caption are not involved in this appeal as an appellant or appellee.

## II.  ANALYSIS

## A.  THE RECEIVERSHIP CLAIMS

## 1.  THE RECEIVER LOANS

Defendant first argues on appeal that the trial court erred in approving the receiver loan in November 2016 and in approving the receiver's supplemental budget in March 2017.  Defendant's arguments fail.

A receiver is considered to be an arm of the court.  *Band v Livonia Assoc*, 176 Mich App 95, 108; 439 NW2d 285 (1989).  This Court reviews for an abuse of discretion a trial court's approval of a receiver's financial decisions or actions.  See *Gauss v Central West Cas Co*, 289 Mich 15, 19-20; 286 NW 139 (1939); *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 275; 761 NW2d 761 (2008).  "An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes."  *Ypsilanti Charter Twp*, 281 Mich App at 275.  Moreover, a receiver has discretion in managing a business or property, and courts generally do not interfere in a receiver's discretionary decisions absent some abuse or wrong committed by the receiver.  *Morley v Snow*, 117 Mich 246, 251; 75 NW 466 (1898).

Initially, these issues are moot.  This Court generally does not decide moot issues.  *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).  "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief."  *Id*. Even if the trial court erred in approving the receiver loan and budget, there is now no relief that could be granted to defendant.  A judgment of foreclosure was entered with respect to the property that was the subject of the receivership, plaintiff purchased the property at the foreclosure sale, and defendant failed to redeem the property within the statutory redemption period.  See *Can IV*, 328 Mich App at 658, 666.  As this Court explained in dismissing defendant's appeal from the judgment of foreclosure, defendant's "failure to redeem the property within the redemption period resulted in the extinguishment of all [defendant's] rights in and to the property.  There remains no relief that this Court can grant it on appeal, so this appeal is moot."  *Id*. at 666.  The same reasoning applies here.  Given the extinguishment of all of defendant's rights in and to the property that was the subject of the receivership, there is now no relief that could be granted to defendant with respect to any error in the approvals of the receiver's loan and budget.  These issues are therefore moot.

Defendant's arguments also fail for other reasons.  Defendant contends that the receiver loan was not authorized by the terms of the loan agreements between plaintiff and defendant.  But § 9.3 of defendant's mortgage authorized the appointment of a receiver and the advancement of funds by plaintiff in connection with the receivership.  Further, MCL 570.1123(1), a provision of the Construction Lien Act (CLA), MCL 570.1101 *et seq*., provides, in relevant part:

> The receiver may petition the court for authority to complete construction of improvements to the real property in full or in part, to borrow money to complete the construction, and to grant security, by way of mortgage or otherwise, for the borrowings.  The priority of the security shall be determined by the court.

In addition, the order appointing the receiver authorized the receiver to "enter into a loan agreement with [p]laintiff to borrow funds to winterize, safeguard, and complete construction of the [r]eceivership [p]roperty . . . ." Therefore, the receiver loan was authorized.

Defendant further argues that the joint motion of plaintiff and the receiver to approve the receiver loan should have been denied because the receiver loan documents were not appended to the joint motion when it was filed on November 10, 2016. Defendant's argument is unavailing. The joint motion, including an appended affidavit of Matthew Mason, a representative of the receiver, was served on defendant by delivery on November 10, 2016, seven days before the November 17, 2016 hearing on the joint motion, in conformance with MCR 2.119(C)(1)(b) (providing that a written motion must be served at least seven days before the time set for hearing, if served by hand or electronic delivery). Although the receiver loan documents were not appended to the joint motion or Mason's affidavit, both of which referred to the receiver loan documents, the joint motion explained that the receiver loan documents were still being finalized and would be provided to the court shortly. This explanation in the joint motion satisfied MCR 2.119(B)(2)(d) (providing that all documents referred to in an affidavit filed in support of a motion must be attached to the affidavit unless, as relevant here, the documents "are of such nature that attaching them would be unreasonable or impracticable, and this fact and the reasons are stated in the affidavit or the motion.").

Additionally, even if the failure to attach the receiver loan documents to the joint motion or Mason's affidavit violated the court rule, defendant has not demonstrated prejudice requiring reversal. The receiver loan documents were filed with the trial court on November 14, 2016, three days in advance of the November 17, 2016 hearing, and defendant admits that the receiver loan documents were e-mailed to defendant on the evening of November 13, 2016. The trial court reasonably concluded that defendant had adequate time to review the receiver loan documents. Defendant offers no reason to believe that additional time to review the receiver loan documents would have altered the outcome at the November 17, 2016 hearing. The trial court determined at the hearing that MCL 570.1123(1) was satisfied because the value added to the property from the construction was likely to exceed the cost of the additional construction. Defendant fails to articulate any ground on which to conclude that the trial court's determination on this point was erroneous or that a different result would have been reached if there had been additional time to review the receiver loan documents. Given defendant's failure to demonstrate prejudice, the alleged violation of the court rule does not require reversal. See *Hubka v Pennfield Twp*, 197 Mich App 117, 119-120; 494 NW2d 800 (1992), rev'd in part on other grounds 443 Mich 864 (1993) (violations of MCR 2.119(B) and (C) did not require reversal because the appellant failed to show any prejudice resulting from the violations).

## 2. THE RECEIVER'S SUPPLEMENTAL BUDGET

As for defendant's contention that the trial court erred in approving the receiver's supplemental budget in March 2017, defendant has waived review of that issue by failing to include it in defendant's statement of questions presented. *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019). Defendant makes a cursory assertion that the receiver somehow violated its fiduciary duty in seeking a supplemental budget, but defendant fails to provide an adequate argument in support of this assertion. Defendant cannot rely on this Court to make defendant's arguments, and the failure to adequately brief the issue constitutes abandonment. *Id*.

In any event, there is no evidence of fraud or overreaching on the part of the receiver. See *Gauss*, 289 Mich at 20 (the trial court did not abuse its discretion in approving a receiver's business decision when there was no evidence of fraud or overreaching). We discern no basis to question the trial court's determination that the receiver's motion for a supplemental budget was adequately supported by the receiver's detailed budget summary and subcontractors' bids. See generally *Kurrasch v Kunze Realty Co*, 296 Mich 122, 124; 295 NW 583 (1941) (the trial court's decision whether to approve a receiver's charges was "treated as presumptively correct, since it has far better means of knowing what is just and reasonable than an appellate court can have[]").[2]

### 3. THE AMENDED RECEIVER LOAN AND BUDGET

Defendant next argues that the trial court erred in approving the amended receiver loan and amended receiver budget in November 2017.[3] Defendant's argument is unavailing.

Initially, this issue is moot for the same reasons set forth with respect to the previous issues. This Court generally does not decide moot issues. *B P 7*, 231 Mich App at 359. "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *Id*. Even if the trial court erred in approving the amended receiver loan and budget, there is now no relief that could be granted to defendant. A judgment of foreclosure was entered with respect to the property that was the subject of the receivership, plaintiff purchased the property at the foreclosure sale, and defendant failed to redeem the property within the statutory redemption period. See *Can IV*, 328 Mich App at 658, 666. As this Court explained in dismissing defendant's appeal from the judgment of foreclosure, defendant's "failure to redeem the property within the redemption period resulted in the extinguishment of all [defendant's] rights in and to the property. There remains no relief that this Court can grant it on appeal, so this appeal is moot." *Id*. at 666. The same reasoning applies here. Given the extinguishment of all of defendant's rights in and to the property that was the subject of the receivership, there is now no relief that could be granted to defendant with respect to any error in the approval of the receiver's amended loan and budget. This issue is thus moot.

Defendant's argument on this issue also fails on the merits. Defendant asserts that plaintiff and the receiver failed to present enough documentation to support the request for additional funds. However, the trial court did not abuse its discretion in determining that adequate documentation was presented to support the need for more money to complete the construction project. Attached

---

[2] Defendant questions why the receiver asked for additional funds for defendant Jermor Plumbing & Heating, Inc. ("Jermor"), a subcontractor, but the previously referenced supplemental exhibit that the receiver filed in support of its motion indicated the need for additional work by Jermor.

[3] In connection with this issue, defendant argues that the amount of purported cost overruns was about $24 million because of approximately $6 million of credits, but defendant does not adequately explain this contention. "A party may not simply announce a position and leave it to this Court to make the party's arguments . . . ." *Seifeddine*, 327 Mich App at 519. "Failure to adequately brief an issue constitutes abandonment." *Id*. at 520. In any event, as explained later, the trial court's approval of the amended receiver loan and amended receiver budget was not an abuse of discretion.

to the joint motion was an affidavit of Mason setting forth the reasons for the increased costs to complete the project, which included the following: defendant's original construction budget was unrealistic; defendant's work on the project was deficient and had to be corrected; the poor reputation of the project required significant time and costs to develop good will to bring subcontractors back to the site; and there were additional expenses not included in the original budget, including real estate taxes, insurance, and receivership fees and expenses. Mason averred that the value added to the project from construction was likely to exceed the cost of the additional construction, in conformance with MCL 570.1123(1). Mason's affidavit provided specific detailed examples regarding why defendant's original construction budget was unrealistic and regarding defendant's deficient work on the project. Attached as exhibits to Mason's affidavit were the general contractor's revised and detailed budget summary regarding the remaining phases of construction and a list of defects in defendant's work on the project. Overall, the trial court's determination that adequate documentation was presented to support the need for additional funds to complete the construction project fell within the range of reasonable and principled outcomes.

In its argument on this issue, defendant improperly relies on documents that were not presented to the trial court when it ruled on this question. Obviously, the trial court did not abuse its discretion in failing to consider documents that were not presented to it or did not yet exist. Moreover, defendant's reliance on those additional documents is misplaced. Defendant takes out of context the April 16, 2018 deposition testimony of plaintiff's construction consultant, Tina Van Curen, as saying that a typical cost overrun is 5%, and then cites plaintiff's August 24, 2017 cost overrun summary as showing cost overruns in excess of 5%. In fact, Van Curen testified that a typical cost overrun is 5% in "a perfect world" in which the same contractor works on a building from start to finish, but that it would be impossible to say what a reasonable cost overrun would be in this case. Defendant's characterization of Van Curen's testimony is therefore highly misleading, and her testimony when read in its full and proper context does not remotely call into question the trial court's decision on this issue, which was rendered several months before Van Curen testified.

Also misleading is defendant's contention that it had only a "few hours" to respond to the request for additional funds. In fact, defendant had several weeks. Plaintiff and the receiver filed their joint motion for an amended receiver loan and amended receiver budget on August 31, 2017. The case was then administratively closed on September 5, 2017, due to defendant's bankruptcy filing, and after the bankruptcy stay was lifted and this case was reopened on October 16, 2017, the joint motion was heard on October 19, 2017. No basis exists for defendant's suggestion that it had only a few hours to review the motion.

## 4. DISCOVERY RULINGS

Defendant next challenges several of the trial court's discovery rulings. All of defendant's appellate arguments regarding discovery fall short.

This Court reviews the grant or denial of a discovery motion for an abuse of discretion. *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011). "An abuse of discretion is not simply a matter of a difference in judicial opinion, rather it occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*.

"Michigan follows an open, broad discovery policy that permits liberal discovery of any matter, not privileged, that is relevant to the subject matter involved in the pending case." *Augustine*, 292 Mich App at 419 (quotation marks and citation omitted). "However, Michigan's commitment to open and far-reaching discovery does not encompass fishing expeditions. Allowing discovery on the basis of conjecture would amount to allowing an impermissible fishing expedition." *Id*. at 419-420 (quotation marks, brackets, and citations omitted). "[A] trial court must also protect the interests of the party opposing discovery so as not to subject that party to excessive, abusive, or irrelevant discovery requests." *Planet Bingo, LLC v VKGS, LLC*, 319 Mich App 308, 327; 900 NW2d 680 (2017) (quotation marks and citation omitted).

a. QUASHING SUBPOENAS

Defendant's first argument regarding discovery is that the trial court erred by quashing subpoenas that defendant served on multiple third parties, including the receiver, the general contractor, the receiver's counsel, and plaintiff's counsel. Defendant's argument fails because the trial court did not abuse its discretion in quashing the subpoenas.

Defendant fails to cite any pertinent authority or provide any meaningful argument challenging the trial court's determination that the receiver and its agent, the general contractor, were protected from service of process and other actions. It is not this Court's role to help defendant make its arguments. *Seifeddine*, 327 Mich App at 521, and defendant's failure to adequately brief this issue constitutes abandonment. *Id*. As noted earlier, a receiver is considered to be an arm of the court. *Band*, 176 Mich App at 108. MCR 2.622(D)(6) provides, "The receiver shall furnish information concerning the receivership estate and its administration as reasonably requested by any party to the action or proceeding." The order appointing the receiver required the receiver to provide monthly reports to the parties and the court, and the receiver complied with this duty by providing monthly reports throughout the period that the receivership was in effect. The receiver was ordered to provide further documents to defendant later in the case, which the receiver did.

Defendant also fails to address the trial court's determination that the subpoenas issued to the receiver and the general contractor were excessive, burdensome, and overbroad. "When an appellant fails to address the basis of a trial court's decision, this Court need not even consider granting relief." *Seifeddine*, 327 Mich App at 522. Overall, defendant has failed to establish that the trial court abused its discretion in quashing the subpoenas issued to the receiver and the general contractor.

Defendant's argument is also deficient with respect to its challenge to the orders quashing the subpoenas issued to plaintiff's counsel and the receiver's counsel. Defendant says that the subpoenas were not seeking information protected by the attorney-client privilege, but defendant fails to address the trial court's additional rationales for quashing those subpoenas, including that the subpoenas sought information protected by the attorney work-product doctrine, and that the subpoenas were excessive, burdensome, and overbroad. This Court need not consider granting defendant relief given its failure to address these aspects of the trial court's decision. *Seifeddine*, 327 Mich App at 522. The trial court reasonably concluded that the subpoenas were excessive, burdensome, and overbroad. Defendant has offered scant explanation for why it needed to subpoena third parties and why the information it was seeking could not have been obtained

through discovery from plaintiff. Plaintiff notes without contradiction from defendant that plaintiff had already provided 27,000 documents to defendant by the time of the trial court's ruling on this issue and that additional documents were in the process of being provided. Defendant has not shown that it was necessary to impose a burden on third parties to provide further information.[4]

### b. THE RECEIVER'S RECORDS

Defendant next argues that the trial court erroneously denied defendant access to most of the receiver's books and records. Defendant's argument is also unavailing on this point.

On December 8, 2017, defendant filed a motion to compel the receiver to allow defendant to review the receiver's books and records. At a February 1, 2018 hearing, the trial court directed defendant to provide a list of documents it was seeking. Defendant then provided a list of documents it was seeking, and the receiver responded that defendant's request was overbroad and burdensome. On February 20, 2018, the trial court signed a four-page order exhaustively listing items that the receiver was required to provide to defendant, including 29 categories of documents or types of information that were required to be provided (although the court noted that some items may overlap).

Defendant's brief on appeal fails to discuss the above-described process that the trial court utilized to decide what information and documents the receiver was required to provide to defendant. Defendant fails to explain how or why the discovery materials ordered to be produced were inadequate. Defendant does not claim that the receiver failed to turn over the materials that the court ordered to be produced. Defendant's appellate presentation of this portion of its argument is deficient, and defendant fails to establish an abuse of discretion in the trial court's ruling.

### c. DISCOVERY FROM PLAINTIFF

Defendant next presents a series of arguments challenging the trial court's rulings regarding defendant's efforts to obtain discovery from plaintiff. In particular, defendant argues that the trial court allowed plaintiff to withhold any requested discovery item that plaintiff deemed irrelevant, that the trial court improperly permitted plaintiff to withhold all e-mails from the period before September 1, 2014, and that plaintiff was allowed to conceal communications listed on its April 18, 2018 privilege log. Defendant's arguments are unavailing.

Defendant argues that the trial court improperly allowed plaintiff to withhold any item that plaintiff deemed irrelevant or that plaintiff determined defendant already possessed. Defendant says that this amounted to "the fox guarding the henhouse." Defendant's argument fails because it is premised on a mischaracterization of the trial court's rulings. The trial court did not simply

---

[4] Defendant asserts that the trial court erred in awarding attorney fees as sanctions in the orders quashing the subpoenas. Defendant has waived that issue by failing to include it in the statement of questions presented. *Seifeddine*, 327 Mich App at 521. Also, defendant's argument on that issue is cursory; it consists of four sentences, three of which are in a footnote. Defendant cannot simply announce its position and expect this Court to make an argument for defendant. *Id*. at 519. Defendant has abandoned the sanctions issue by failing to adequately brief it. *Id*. at 520.

allow plaintiff to decide what items were irrelevant or already possessed by defendant. Rather, plaintiff was required to provide an exhaustive privilege log listing all items withheld, including items that plaintiff believed were privileged, irrelevant, or already possessed by defendant. Defendant had the opportunity to seek to compel production of items listed on the privilege log, with the trial court resolving any disputes over whether an item was subject to production. Defendant is wrong in suggesting that plaintiff was given the final say in such matters.

Defendant further contends that the trial court abused its discretion by limiting the e-mail production requirement to e-mails generated after September 1, 2014. We disagree. In determining whether a temporal limitation on discovery was proper, an appellate court should consider whether a time limit was warranted and whether the particular time limit in the case was reasonable, i.e., whether it provided a meaningful opportunity for discovery. *Kuttner v Zaruba*, 819 F3d 970, 974 (CA 7, 2016).[5] The temporal limitation was reasonable in this case because the parties' original construction loan agreement was entered one month after September 1, 2014, and the central issue in this case concerned defendant's defaults under the construction loan agreement. Defendant offers nothing more than conjecture to suggest that communications before September 1, 2014 would have been pertinent to any claims or counterclaims. "Allowing discovery on the basis of conjecture would amount to allowing an impermissible fishing expedition." *Augustine*, 292 Mich App at 420 (quotation marks and citation omitted). The temporal limitation was not an abuse of discretion.

Defendant also argues that the trial court should have ordered production of some items on the privilege log. According to defendant, there were e-mails that did not include an attorney or that included third parties such as Van Curen, and those e-mails thus were not privileged. Defendant's argument is not persuasive. Defendant fails to identify any particular item in the privilege log that defendant contends should not have been protected from disclosure. Defendant cannot simply announce a position and expect this Court to make arguments for defendant. *Seifeddine*, 327 Mich App at 519, 521. "This Court will not search the record for factual support for a party's claim." *Barrow v Detroit Election Comm*, 305 Mich App 649, 682; 854 NW2d 489 (2014) (quotation marks and citation omitted). Defendant's failure to adequately brief this issue constitutes abandonment. *Seifeddine*, 327 Mich App at 520; *Barrow*, 305 Mich App at 683. In any event, "[t]he attorney-client privilege attaches to direct communication between a client and his attorney as well as communications made through their respective agents." *Leibel v Gen Motors Corp*, 250 Mich App 229, 236; 646 NW2d 179 (2002) (citation omitted). Plaintiff argues that all of the communications at issue involved plaintiff's representatives and agents discussing or relaying legal advice from plaintiff's counsel. Defendant has provided no argument regarding any specific item on the privilege log that would contradict plaintiff's explanation. Overall, defendant has failed to establish that the trial court abused its discretion in its ruling on this matter.

---

[5] Because Michigan's discovery rules are similar to the federal discovery rules, this Court may consider persuasive federal caselaw on discovery issues. *Alberto v Toyota Motor Corp*, 289 Mich App 328, 336-337; 796 NW2d 490 (2010).

Defendant next argues that it was improperly denied discovery from plaintiff's expert, Van Curen, including her reports and documents regarding this case. Defendant's argument does not succeed.

Defendant has not shown that the trial court abused its discretion in determining that the work-product doctrine barred production of Van Curen's reports and documents. The work-product doctrine provides a qualified immunity from disclosure of notes, working papers, memoranda, and similar written materials prepared in anticipation of litigation. *D'Alessandro Contracting Group, LLC v Wright*, 308 Mich App 71, 77-78; 862 NW2d 466 (2014). "Work product is prepared in anticipation of litigation if the prospect of litigation is identifiable, either because of the facts of the situation or the fact that claims have already arisen." *Id*. at 78 (quotations marks and citations omitted). An expert's arrangement of facts and opinions in a report, made in direct response to an attorney's inquiry, constitutes work product. *Backiel v Sinai Hosp of Detroit*, 163 Mich App 774, 778; 415 NW2d 15 (1987). MCR 2.302(B)(4)(b) provides:

> A party may not discover the identity of and facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, except
>
> (*i*) as provided in MCR 2.311,[6] or
>
> (*ii*) where an order has been entered on a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Nontestimonial experts are protected against discovery because of their advisory or consulting role. *Nelson Drainage Dist v Bay*, 188 Mich App 501, 505; 470 NW2d 449 (1991).

Although Van Curen served as a general construction consultant for plaintiff throughout the receivership,[7] she was also retained by plaintiff's counsel as a consulting expert in regard to this litigation. Defendant focuses its argument on its request for Van Curen's October 2016 report, but the trial court appears to have credited plaintiff's explanation that the October 2016 report was prepared at the request of plaintiff's counsel and in anticipation of this litigation, which was commenced later in October 2016. Defendant provides no basis to conclude that the trial court's decision fell outside the range of reasonable and principled outcomes. Defendant has not shown exceptional circumstances that would make it impracticable for defendant to obtain facts or opinions by other means. There is no indication that Van Curen knew any facts to which defendant lacked access. Defendant also had Van Curen's declaration that was filed with plaintiff's complaint.

---

[6] MCR 2.311 pertains to physical and mental examinations of persons and is thus inapplicable.

[7] Plaintiff explains that Van Curen's monthly reports regarding the construction project, prepared in her role as a general construction consultant for plaintiff, were provided to defendant, and defendant has not disputed this or provided any reason to conclude that plaintiff is incorrect.

Defendant's argument that the work-product doctrine was waived is likewise unavailing. Defendant says that Van Curen agreed at her deposition to produce documents and that plaintiff's counsel did not object. Defendant's brief on appeal fails to support this waiver argument with a citation of the page number(s) of the transcript of Van Curen's deposition in which the alleged waiver occurred. "This Court will not search the record for factual support for a party's claim." *Barrow*, 305 Mich App at 682 (quotation marks and citation omitted); see also MCR 7.212(C)(7) ("Facts stated must be supported by specific page references to the transcript, the pleadings, or other document or paper filed with the trial court."). Defendant's waiver argument is thus abandoned. *Barrow*, 305 Mich App at 683. But defendant's waiver argument would fail anyway. "[A] party may waive work-product protections." *Augustine*, 292 Mich App at 421. Defendant says that Van Curen agreed at her deposition to provide documents, but Van Curen was not a party and could not waive work-product protections on plaintiff's behalf.[8] As for the alleged failure of plaintiff's counsel to object to Van Curen's purported agreement to produce documents, defendant cites no authority that a mere failure to object could constitute a waiver of a privilege. In general, the waiver of a privilege requires an intentional, voluntary act. *Leibel*, 250 Mich App at 241. The alleged failure of plaintiff's counsel to object was not a waiver of the work-product doctrine.

d. DISCOVERY FROM THIRD PARTIES

Defendant next argues that it was improperly denied discovery from third parties, including some of plaintiff's investors and the University of Michigan. Defendant's argument is not persuasive.

In its appellate argument challenging the trial court's order on this matter, defendant fails to address the trial court's rationale, i.e., that the subpoenas defendant issued were untimely because they demanded discovery after the September 30, 2018 discovery cutoff date. "When an appellant fails to address the basis of a trial court's decision, this Court need not even consider granting relief." *Seifeddine*, 327 Mich App at 522. In any event, the trial court did not err by enforcing its discovery deadline. Trial courts possess discretionary authority to set reasonable deadlines in scheduling orders and to enforce those deadlines. See MCR 2.401(B)(2); *Kemerko Clawson, LLC v RXIV, Inc*, 269 Mich App 347, 349-351; 711 NW2d 801 (2005). Defendant was afforded ample time for discovery. Moreover, defendant has not established that any discovery from plaintiff's investors or the University of Michigan would have been likely to lead to the discovery of admissible evidence. Defendant notes that it later obtained, pursuant to a Freedom of Information Act request to the University of Michigan, an August 4, 2015 e-mail from a former president of an entity that controlled plaintiff to the University of Michigan describing the construction project in this case as "on time and on budget with a world class team." That e-mail was written more than a year before this action was filed and long before the milestone extensions and events of default that led to the filing of this action. Defendant offers nothing more than conjecture to suggest that the third-party subpoenas would have led to the discovery of admissible

---

[8] Defendant also asserts that Van Curen waived the work-product doctrine by sharing information with nonparties and nonlawyers, but again, Van Curen was not a party and could not waive work-product protections on behalf of plaintiff. Also, defendant has abandoned this part of the issue because defendant's argument on this point is cursory and unsupported by citations to the record.

-11-

evidence. Permitting discovery on the basis of mere conjecture would allow an impermissible fishing expedition. *Augustine*, 292 Mich App at 419-420. Overall, defendant has not established that the trial court abused its discretion by enforcing its discovery cutoff deadline.

Defendant next argues that it was improperly denied discovery from the general contractor on the construction project, defendant Quandel Construction Services of Michigan, Inc., also known as Quandel Construction Group, Inc. ("Quandel"), and from one of Quandel's subcontractors, defendant D&V Excavating ("D&V"). Defendant's arguments fail.

With respect to Quandel, defendant cites its May 17, 2018 motion to compel discovery from Quandel and the trial court's October 5, 2018 order denying defendant's later motion to compel discovery from Quandel. But defendant fails to address critical events that occurred between the May 17, 2018 motion and the October 5, 2018 order. At a May 31, 2018 hearing, the trial court denied defendant's May 17, 2018 motion to compel but stated that Quandel was required to produce 9,000 documents, including e-mails, that Quandel had agreed to provide to defendant.

On September 20, 2018, defendant filed another motion to compel discovery from Quandel, and defendant said that this motion was a continuation of defendant's May 17, 2018 motion to compel. In the September 20, 2018 motion, defendant acknowledged that Quandel had provided some e-mails and other documents, but defendant asserted that everything had not been provided. On September 24, 2018, Quandel filed a response arguing that it had provided all relevant, responsive, nonprivileged documents to defendant and that defendant had failed to provide any examples of e-mails that were not produced. At a September 27, 2018 hearing, Quandel's counsel stated that hundreds of thousands of pages of documents had been produced and that it was unclear what documents defendant believed were missing. The trial court likewise stated that it was unclear what specifically defendant was requesting, given the documents that Quandel had already produced, and the court thus said that it was denying defendant's motion to compel. The trial court signed an order denying defendant's motion to compel on October 5, 2018.

On appeal, defendant cursorily asserts that the trial court disregarded evidence of missing e-mails. Defendant has provided no factual support for this assertion. Defendant merely cites its May 17, 2018 motion to compel and the October 5, 2018 order denying the later motion to compel. Defendant fails to address the intervening events described above, such as Quandel's production of documents, including e-mails. Defendant has not identified any evidence that Quandel withheld documents. "This Court will not search the record for factual support for a party's claim." *Barrow*, 305 Mich App at 682 (quotation marks and citation omitted). Defendant cannot rely on this Court to make arguments for defendant. *Seifeddine*, 327 Mich App at 519, 521. Defendant's inadequate briefing on this point constitutes abandonment. *Id*. at 520; *Barrow*, 305 Mich App at 683. The trial court did not abuse its discretion in ruling on the motions to compel documents from Quandel.

With respect to D&V, defendant focuses on an August 17, 2017 hearing on D&V's motion for summary disposition regarding defendant's claim against D&V.[9] At that hearing, defendant asserted that D&V had failed to provide e-mails and that D&V's motion should thus be denied or that the matter should be adjourned for 30 days to allow time for further discovery. But the trial

---

[9] Defendant's brief on appeal incorrectly indicates that this hearing was held on April 17, 2017.

court ruled that the receiver controlled defendant's claims against the general contractor and subcontractors, and the court thus approved a settlement that the receiver and D&V had reached regarding defendant's claim against D&V. On October 20, 2017, the trial court signed an order granting D&V's motion for summary disposition pursuant to MCR 2.116(C)(7) regarding defendant's claim against D&V and dismissing D&V from the case in accordance with the settlement. As discussed later, the trial court correctly ruled that the receiver controlled defendant's claims against the general contractor and subcontractors. Hence, there was no error in the dismissal of D&V from the case pursuant to its settlement with the receiver and in the resulting denial of further discovery against D&V.

## 5. THE RECEIVER'S CONTROL OF DEFENDANT'S CLAIMS

Defendant next argues that the trial court erred in ruling that the receiver controlled defendant's claims against the general contractor and subcontractors. Defendant's argument is unpersuasive.

Whether the receiver controlled defendant's claims against the general contractor and subcontractors presents a question of law. Questions of law are reviewed de novo. *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 406; 751 NW2d 443 (2008).

A "receiver derives [its] authority from statutes and court rules and from the order of appointment and specific orders which the appointing court may thereafter make." *Band*, 176 Mich App at 108. MCR 2.622(E)(1) provides, "Except as otherwise provided by law or by the order of appointment, a receiver has general power to sue for and collect all debts, demands, and rents of the receivership estate, and to compromise or settle claims." The order appointing the receiver in this case provided that the receiver had full and sole control over the receivership property and that the receivership property included "all claims of [defendant] related to the [p]roperty, including without limitation all claims related to any insurance or bond related to the [p]roperty." Therefore, the trial court properly ruled that defendant's claims related to the property, including its claims against Quandel and certain subcontractors, as well as claims related to the bond issued to insure Quandel's performance, were under the receiver's full and sole control. There was thus no error in dismissing defendant's claims or in denying defendant's motion to amend the order appointing the receiver to allow defendant to pursue a bond claim. Defendant says it had the right to defend itself in the foreclosure action, but defendant improperly conflates its defense in the foreclosure case, over which defendant had control, with its claims for affirmative relief against Quandel and subcontractors, over which the receiver had sole control.

Defendant further asserts that any dismissal of its claims should have been without prejudice. But that argument is now moot. As explained, the receiver controlled defendant's claims, and as defendant acknowledges in its brief on appeal, plaintiff and the receiver ultimately reached court-approved settlements with Quandel and subcontractors who had asserted liens against the property. In light of those court-approved settlements, there is no relief that could be granted at this point. "An issue is deemed moot when an event occurs that renders it impossible

for a reviewing court to grant relief." *B P 7*, 231 Mich App at 359. This Court generally does not decide moot issues. *Id.*[10]

### 6. THE RECEIVER'S GOOD FAITH AND IMMUNITY

Defendant argues that the trial court erred by determining that the receiver acted in good faith and was immune from all claims. Defendant's argument fails.[11]

A receiver is considered to be an arm of the court. *Band*, 176 Mich App at 108. This Court reviews for an abuse of discretion a trial court's approval of a receiver's financial decisions or actions. See *Gauss*, 289 Mich at 17-20; *Ypsilanti Charter Twp*, 281 Mich App at 275. A trial court's decisions to discharge a receiver and to terminate a receivership are likewise reviewed for an abuse of discretion. *Singer v Goff*, 334 Mich 163, 167; 54 NW2d 290 (1952). "An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes." *Ypsilanti Charter Twp*, 281 Mich App at 275. Moreover, a receiver has discretion in managing a business or property, and courts generally do not interfere in a receiver's discretionary decisions absent some abuse or wrong committed by the receiver. *Morley*, 117 Mich at 251.

Initially, this issue is moot. This Court generally does not decide moot issues. *B P 7*, 231 Mich App at 359. "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *Id*. Even if the trial court erred in its order discharging the receiver by finding that the receiver acted in good faith and was immune from all claims, there is now no relief that could be granted to defendant. A judgment of foreclosure was entered with respect to the property that was the subject of the receivership, plaintiff purchased the property at the foreclosure sale, and defendant failed to redeem the property within the statutory redemption period. See *Can IV*, 328 Mich App at 658, 666. As this Court explained in dismissing defendant's appeal from the judgment of foreclosure, defendant's "failure to redeem the property within the redemption period resulted in the extinguishment of all [defendant's] rights in and to the property. There remains no relief that this Court can grant it on appeal, so this appeal is moot." *Id*. at 666.

---

[10] Defendant asserts in a footnote that the dismissal of Quandel and the subcontractors at issue, *and* the approval of the settlements, should be reversed. But defendant fails to cite any authority or to elaborate any argument that a court-approved settlement should be reversed in these circumstances. Defendant cannot rely on this Court to make arguments or search for authority to support defendant's position. *Seifeddine*, 327 Mich App at 519, 521. Defendant's failure to adequately brief this point constitutes abandonment. *Id*. at 520-521. In any event, as noted, the receiver had sole control over defendant's claims, and there is no basis to upset the settlements.

[11] As an initial point of clarification, we note that the trial court's order discharging the receiver did not say in so many words that the receiver was "immune" from all claims. What the order stated was that the receiver and its agents shall not have any claim or cause of action relating to the receivership brought against them. With this clarification regarding the language of the trial court's order, we will, for ease of discussion, sometimes use defendant's terminology regarding immunity when analyzing this issue.

The same reasoning applies here. Defendant fails to elucidate any interest it has in the trial court's determinations regarding whether the receiver acted in good faith and whether the receiver is immune from all claims. Furthermore, defendant does not indicate directly that it wishes to sue the receiver for the alleged instances of bad faith. But if that is what defendant means to suggest, defendant has not explained how it has any standing to sue the receiver. Given the extinguishment of all of defendant's rights in and to the property that was the subject of the receivership, defendant no longer has any interest in the former receivership estate. There is now no relief that could be granted to defendant regarding any error in the discharge of the receiver. This issue is therefore moot.

Defendant's argument also lacks merit. In order to sue a court-appointed receiver, a party must allege and prove bad faith. *In re Receiver of Venus Plaza*, 228 Mich App 357, 361; 579 NW2d 99 (1998). Mere negligence or errors in business judgment on the part of a court-appointed receiver are not actionable. *Id*. at 361-362. Defendant's allegations of bad faith are not supported. Defendant asserts that the receiver was responsible for delays in the construction project and paid excessive costs and fees, but defendant identifies no facts to suggest anything beyond, at worst, mere negligence or errors in business judgment on the part of the receiver. Defendant notes that the receiver joined some motions with plaintiff contravening defendant's position, that the receiver agreed to the receiver loan, and that the receiver ultimately agreed to foreclosure, but defendant provides no basis to conclude that the receiver was doing anything other than pursuing what the receiver reasonably believed to be in the best interest of the receivership estate. Defendant also recycles many of its arguments from other issues on appeal regarding the receiver loan, the supplemental receiver loan and budget, and discovery disputes, but all of defendant's arguments on those points lack merit for the reasons set forth earlier.[12]

Defendant adds that there should have been an evidentiary hearing on its challenges to the receiver's actions, but cites no authority requiring an evidentiary hearing to resolve such disputes. Defendant cannot rely on this Court to make arguments or search for authority to support defendant's position. *Seifeddine*, 327 Mich App at 519, 521. Defendant's failure to adequately brief this point constitutes abandonment. *Id*. at 520-521. Defendant's claim that an evidentiary hearing was required is not well taken, given that defendant's counsel failed even to attend the hearing that was held on the receiver's motion to discharge the receiver and the receiver's bond.

## B. DEFENDANT'S COUNTERCLAIMS

Defendant next argues that the trial court erred in granting summary disposition to plaintiff on defendant's counterclaims. Defendant challenges the determination that no genuine issue of material fact existed regarding defendant's defaults under the loan documents, including defendant's failure to resolve construction liens and meet contractual milestones. Defendant

---

[12] Moreover, to the extent the court-appointed receiver was serving as "an arm of the court" and "perform[ing] a function integral to the judicial process," the receiver was entitled to "absolute quasi-judicial immunity." See *Diehl v Danuloff*, 242 Mich App 120, 133; 618 NW2d 83 (2000) (because a court-appointed psychologist was serving as "an arm of the court" and "perform[ing] a function integral to the judicial process," he was entitled to "absolute quasi-judicial immunity").

-15-

contends that it was plaintiff who first breached the loan agreement. None of these arguments has merit.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When considering a motion under MCR 2.116(C)(10),

> a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil*, 504 Mich at 160 (quotation marks and citations omitted).]

A mere promise or possibility that a claim might be supported by evidence produced at trial is insufficient to avoid summary disposition. *Bennett v Detroit Police Chief*, 274 Mich App 307, 317; 732 NW2d 164 (2006), citing *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999).

This Court also reviews de novo the proper interpretation or application of a contract. *Yoches v Dearborn*, 320 Mich App 461, 479; 904 NW2d 887 (2017). Unambiguous contractual language is applied as written. *Chestonia Twp v Star Twp*, 266 Mich App 423, 432; 702 NW2d 631 (2005).

## 1. BREACH OF CONTRACT

Initially, although defendant focuses most of its argument for this issue on a challenge to the grant of summary disposition to plaintiff on defendant's counterclaim for breach of contract, defendant fails to cite caselaw setting forth the elements of a breach of contract claim. "A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position. Failure to adequately brief an issue constitutes abandonment." *Seifeddine*, 327 Mich App at 519-520 (citation omitted).

Secondarily, defendant contends that, in its summary disposition ruling, the trial court improperly made findings of fact and relied on findings made when appointing the receiver in the early days of this case, and did not consider evidence submitted later in the case. Defendant's contention lacks merit. The trial court did not fail to consider evidence submitted in connection with the summary disposition motion. Although the evidence submitted at the summary disposition stage led to the same conclusion reached at the receivership motion stage, i.e., that it was beyond reasonable dispute that defendant defaulted under the loan documents, this does not mean that the trial court failed to consider the evidence presented in connection with the summary disposition motion. Nor is there merit to defendant's related argument that the trial court improperly made factual findings when deciding the summary disposition motion. "A court is not permitted to make findings of fact when deciding a summary disposition motion." *Price v Kroger Co of Mich*, 284 Mich App 496, 500; 773 NW2d 739 (2009). The trial court did not make factual findings; it concluded that no genuine issue of material fact existed regarding defendant's defaults under the loan documents.

The elements of a breach of contract claim are "(1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601; 865 NW2d 915 (2014). "The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994) (quotation marks and citation omitted).

### a. CONSTRUCTION LIENS

Defendant's first specific contention with respect to the breach of contract claim pertains to defendant's failure to resolve construction liens placed on the property. Defendant asserts that plaintiff failed to follow § 6.13 of the construction loan agreement, which gave defendant 30 days to discharge a lien, provide plaintiff with a surety bond covering the lien, or provide assurances deemed acceptable to plaintiff in its sole discretion. Defendant notes that this action was filed less than 30 days after two subcontractor liens were filed in late September and early October of 2016. Defendant's argument fails. Defendant has presented no evidence to support a conclusion that defendant could have resolved the liens in the absence of additional funding from plaintiff, which, as discussed later, plaintiff was not contractually required to provide given that defendant was already in default by that point. Indeed, this Court's prior opinion affirming the appointment of the receiver correctly took note of "defendant's inability to discharge the liens . . . ." *Can IV*, unpub op at 6. Nothing has changed on this point since the issuance of that opinion.

Defendant further asserts that plaintiff caused the construction liens by failing to provide contractually required funding for June, July, and August of 2016. The record contains no support for the contention that plaintiff failed to make any payments that plaintiff was required to make under the loan documents. This Court's prior opinion affirming the appointment of the receiver addressed this point in the context of a similar argument defendant made in that appeal:

> Although plaintiff advised defendant that it approved certain subcontractor's pay applications, plaintiff informed defendant that before it would pay those applications, defendant had to provide plaintiff unconditional lien waivers. Under Loan Agreement § 9.2, defendant had the obligation to provide lien waivers before plaintiff's obligation to disburse funds arose. The record contains no evidence that defendant ever obtained full unconditional lien waivers from the subcontractor who recorded liens or presented them to plaintiff. Consequently, plaintiff had no obligation to make such payments merely because it approved the work. Defendant had to fulfill the contractual conditions precedent to payment. Defendant failed to do so. Further, defendant's commission of the other events of default as defined in Loan Agreement § 10.1 triggered operation of Loan Agreement § 9.1(e) which unequivocally provided that plaintiff had no obligation to disburse funds if any default existed. The record reflects that plaintiff complied with the terms of the Loan Agreement and simply exercised its contractual rights. Therefore, we hold that the trial court did not abuse its discretion by appointing a receiver because plaintiff did not come to the trial court with unclean hands. [*Can IV*, unpub op at 7.]

-17-

Nothing has materially changed since the issuance of this Court's prior opinion. That is, the evidence before the trial court at the summary disposition stage likewise afforded no basis to conclude that plaintiff failed to provide funding that it was contractually required to provide.[13]

## b. MAINTENANCE OF THE PROPERTY

Defendant next presents an argument challenging the determination that defendant failed to maintain and winterize the property. Defendant suggests that plaintiff somehow breached the loan agreement by seeking to hold defendant in default for failure to properly maintain the property as required by the mortgage. Defendant's argument fails.

As this Court explained in its prior opinion affirming the appointment of the receiver:

Section 10.1 of the Loan Agreement defined numerous "Events of Default," including defendant's failure to complete the construction Milestones by specified Milestone Dates, defendant's failure to cure any breach or default, and defendant's failure to pay or discharge any lien claims on the property. If defendant defaulted, plaintiff could accelerate the debt, cease any further disbursements, and demand payment. Similarly, under the Mortgage, plaintiff had several available remedies including accelerating the debt, taking possession of the property and completing the construction, commencing a judicial foreclosure, or selling the property under the power of sale granted by the Mortgage. [*Can IV*, unpub op at 2.[14]]

---

[13] Defendant also asserts that an August 2018 supplemental report of Van Curen indicates that the subcontractors were paid too much. Defendant therefore theorizes that this leads to the conclusion that the subcontractor liens were invalid or illegitimate. Defendant fails to explain how any of this is pertinent to the contractual language at issue. Defendant was contractually required to resolve subcontractor liens; an assessment in hindsight of whether the liens were valid does not appear to have any bearing on whether defendant was properly declared in default for failing to resolve liens.

[14] In particular, the loan agreement defined "event of default" to include, among other things:

(c) Borrower fails to perform or observe any term, covenant or agreement contained in this Agreement or any other Loan Documents within the time period provided in this Agreement or any applicable Loan Document (other than any term, covenant or agreement otherwise addressed in another paragraph of this Section 10.1 . . .) . . . ; or

* * *

(m) Borrower fails to achieve any of the Milestones by the applicable Milestone Date; or

-18-

Section 3.4 of the mortgage, which was executed at the same time as the loan agreement, provided, in relevant part, that defendant "shall cause the Property to be maintained and operated in a good and safe condition and repair and in keeping with the condition and repair of properties of a similar use, value, age, nature and construction."[15]

No material factual dispute exists regarding defendant's failure to maintain the property as required by § 3.4 of the mortgage. As noted in this Court's prior opinion affirming the appointment of the receiver, defendant "admitted during the [October 27, 2016] hearing that the construction manager it hired roughly nine days before had not completed tasks necessary to secure the project from the weather." *Can IV*, unpub op at 6. Hence, there was no material dispute that "[t]he property faced imminent harm if not secured and protected from the elements because of the perils of winter and the multitude of unfinished aspects to the building." *Id*. Defendant admitted at the October 27, 2016 hearing that the roof and building enclosure were not yet completed. Defendant stated that "[t]he roof is *near* complete" and that "significant work" was "going on on the project right now[]" that included "substantial work that's occurred on the site to enclose the building further and to complete the site work to where it completely winterizes the property so that there will [be] concrete and asphalt being poured in the next week to two weeks in order for that site to be secured." Defendant's admissions thus reflect that, although the building enclosure was supposed to be completed on August 26, 2016 (as discussed in more detail later), the building was not fully protected from the approaching winter weather as of October 27, 2016. These admissions alone suffice to conclude that defendant failed to maintain the property in a good and safe condition because defendant did not fully enclose the building.

The fact that Van Curen's declaration regarding the inadequate condition of the property was not notarized, and thus did not comprise a valid affidavit, see *Detroit Leasing Co v Detroit*, 269 Mich App 233, 236; 713 NW2d 269 (2005), is therefore not decisive, given defendant's admissions on this matter. Further, Van Curen testified at deposition regarding many pertinent points she made in her written declaration.

In its appellate argument regarding the issue of its failure to maintain the property, defendant relies on evidence that it did not present to the trial court in opposing plaintiff's motion for summary disposition. "When reviewing a motion for summary disposition, this Court's review is limited to review of the evidence properly presented to the trial court." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 380; 775 NW2d 618 (2009). In any event, the additional evidence defendant cites on appeal would not alter the result. Significantly, defendant errs in relying on a report of plaintiff's construction consultant, Newbanks Construction ("Newbanks"). That report was based on a site visit conducted on September 1, 2016, almost two

---

* * *

(r) (*i*) Borrower fails to pay or discharge, effect a release or provide assurance with respect [to] any claim of lien within ten (10) Business Days after notice of such lien . . . .

[15] Defendant tersely suggests that this provision of the mortgage applies only after construction is completed, but we discern no basis for such a conclusion in the language of the provision.

months before the commencement of this action and the receivership motion hearing. The focus of the Newbanks report was on the overall progress of the construction project as of September 1, 2016, rather than on whether defendant had properly protected the building against approaching winter weather during the relevant time period. Defendant's reliance on Van Curen's August 2018 supplemental report is likewise misplaced. Although Van Curen indicated in that supplemental report that, at the time of a September 15, 2016 site visit, portions of the building's roof had been installed, 20 to 25 men were working at the worksite, and some construction activities were underway, none of this conflicts with her earlier declaration or testimony or with the conclusion that defendant had failed to adequately maintain the property. Overall, no material factual dispute exists about defendant's default in breaching the mortgage provision requiring defendant to keep the property in good and safe condition and repair.[16]

### c. CONSTRUCTION MILESTONES

Defendant next argues that it was not in default for failing to meet construction milestones and that plaintiff should have extended milestone dates due to force majeure events. Defendant's argument once again fails.

The loan documents in this case imposed various obligations on defendant to ensure that the project was completed timely. The loan agreement required defendant to "achieve, complete and perform each . . . Milestone by the applicable Milestone Date therefor." In an attachment to the loan agreement, the parties agreed that the milestone date for substantial completion of the project was October 25, 2016, and that the milestone date for final completion of the project was November 18, 2016. Those two milestone dates never changed. This Court's prior opinion affirming the appointment of the receiver explained the substantial completion and final completion requirements as follows:

> To substantially complete the project, among other things, defendant had to deliver all permits and approvals, obtain a temporary certificate of occupancy respecting all improvements, substantially complete the project according to the plans and specifications, furnish plaintiff all lien waivers and a certificate from the architect that the construction was substantially completed. The parties set the final completion date as November 18, 2016. By the final completion date, defendant had to complete all construction and occupancy requirements. [*Can IV*, unpub op at 2.]

The parties agreed that milestone dates for so-called "interim" milestones, including for building frame completion, building enclosure completion, and mechanical, electrical, and plumbing ("MEP") rough-ins completion, would be added and agreed upon later. The parties later adopted those interim milestone dates and then extended those interim milestone dates multiple times, with the last amendment providing that the milestone date for completion of the building

---

[16] In connection with this part of its argument, defendant says it was not given 45 days to cure any construction defects as required by § 10.1(k)(*i*) of the loan agreement. But defendant was not defaulted under § 10.1(k)(*i*), so the 45-day period set forth in that provision does not apply.

frame, building enclosure, and MEP rough-ins was August 26, 2016, for all three of those interim milestones.

Also, the loan agreement contained a force majeure provision, which stated:

6.11 <u>Force Majeure</u>. If Borrower's performance of any of its obligations under this <u>Article 6</u> (other than obligations to make payments) is directly affected and delayed by Force Majeure, Borrower shall notify Lender in writing within two (2) Business Days after Borrower obtains knowledge of the event which causes the Force Majeure, which notice shall specify in sufficient detail the events causing the Force Majeure, Borrower's best estimate of the delay in Borrower's performance to be caused by the Force Majeure and how Borrower intends to respond to the event of Force Majeure. So long as (*i*) no Event of Default has occurred and is continuing or no Default exists, and (*ii*) such Force Majeure shall not cause or result in a default, breach or violation by Borrower under the Construction Contract or any of the Licenses, Permits and Approvals, Lender shall extend the Substantial Completion Date and the Final Completion Date or other applicable period for Borrower's performance, by a period of time equal to the delay caused by such Force Majeure, but only to the extent the Force Majeure event actually affects the critical path of the schedule for the Work, and in no event shall said relief for any of Borrower's performance obligations exceed one-hundred fifty (150) days in the aggregate. Any such extension, however, shall not otherwise modify any of Borrower's other obligations under this Agreement or any other Loan Document or the Maturity Date.

There is no genuine issue of material fact regarding defendant's failure to meet certain construction milestones. The August 26, 2016 default notice plaintiff sent to defendant reflects that defendant failed to complete the building enclosure and MEP rough-ins by the August 26, 2016 milestone date. Nor did defendant meet the October 25, 2016 substantial completion milestone. This Court's prior opinion affirming the appointment of the receiver correctly noted that "[d]efendant admitted that it failed to do numerous things required under the Loan Agreement including substantially complete the project by the substantial completion date." *Can IV*, unpub op at 6. Defendant "admitted that at best the project was only around 60% completed." *Id*. This Court noted that "[p]laintiff gave defendant notice of its defaults, and defendant failed to cure them." *Id*. Defendant also admitted "that it would never be finished by the November 2016 full completion deadline." *Id*. Nothing has materially changed on any of these points since the time of the receivership motion; reasonable minds cannot differ about defendant's failure to meet milestone dates required by the loan documents.

Rather than present any meaningful challenge to the existence of the defaults, defendant contends that plaintiff was contractually required to extend milestone dates but failed to do so. Defendant contends that the substantial and final completion milestones were supposed to be extended on the basis of when a replacement contractor was hired. Defendant's argument is unconvincing. In support of this argument, defendant relies on an affidavit of its principal, Craig Schubiner, as well as e-mails and deposition testimony of Marti Page, a representative of plaintiff. But Page's e-mails pertain to the setting of interim milestones after closing of the loan agreement, which is what the parties did; the interim milestone dates were set after closing and later extended

many times, with the relevant interim milestones ultimately extended to August 26, 2016. There is no support in Page's e-mails or deposition testimony for the existence of an agreement to extend the substantial and final completion milestone dates. Moreover, to the extent Schubiner's affidavit asserts that there was an agreement with Page to extend milestone dates, defendant fails to establish that Page possessed authority to promise on behalf of plaintiff to extend milestone dates and that plaintiff was bound by any such promise by Page. Page testified that management officials of plaintiff that she named would have had authority to change milestone dates. Defendant has cited no evidence or authority to establish that Page possessed authority to extend milestone dates.

Defendant also argues that a genuine issue of material fact exists regarding whether force majeure events required extensions of milestone dates under § 6.11 of the loan agreement. This argument fails. There is no evidence that defendant provided notice of force majeure events in compliance with the requirements of § 6.11 of the loan agreement. Defendant provided a purported notice of force majeure events in a letter of October 18, 2016, referring vaguely to "a significant shortage of available labor in and around Ann Arbor . . . ."[17] This alleged notice, while obliquely referencing a claimed labor shortage, indisputably failed to "specify in sufficient detail the events causing the [f]orce [m]ajeure," defendant's "best estimate of the delay in [defendant's] performance to be caused by the [f]orce [m]ajeure[,] and how [defendant] intends to respond to the event of [f]orce [m]ajeure[,]" as required by § 6.11 of the loan agreement. And the October 18, 2016 notice was not sent within two business days of when defendant became aware of the alleged force majeure events, which the letter indicated had been going on for months. Although the October 18, 2016 letter indicates that the purported labor shortage "did not become apparent to [defendant] until the last several days[,]" this vague assertion fails to establish that the notice was provided within two business days after defendant learned of the force majeure events, as required by § 6.11 of the loan agreement. Also, § 6.11 required an extension of the substantial completion and final completion milestone dates on the basis of a force majeure event only if, among other things, no default exists. As noted, by the time defendant sent its purported notice of a force majeure event on October 18, 2016, defendant was already in default for failing to meet interim milestones on August 26, 2016. Further, defendant has provided no evidence that the parties' prior agreements to extend the interim milestone dates (ultimately resulting in, e.g., the August 26, 2016 interim milestone date referenced earlier) were based on force majeure events and that the prior agreements required extensions of the substantial completion and final completion milestone dates.

In short, defendant failed to show a genuine issue of material fact regarding whether it provided notice of a force majeure event in compliance with § 6.11 of the loan agreement, and extensions of the substantial completion and final completion milestone dates were not required. In our prior opinion affirming the appointment of the receiver, this Court noted that defendant failed to present evidence "that force majeure events excused its performance and allowed it further

---

[17] The letter also referred to other matters that do not fall within the definition of force majeure in the loan agreement, such as issues with the building foundation as well as negligence and defaults by Quandel. None of those assertions triggered the force majeure provision.

lengthy extensions to the construction deadlines." *Can IV*, unpub op at 6. The same conclusion is reached after reviewing the evidence presented at the summary disposition stage of this case.

## 2. REMAINING COUNTERCLAIMS

Defendant presents cursory arguments on appeal regarding its remaining counterclaims. With respect to its claims for lender liability and breach of fiduciary duty, defendant fails to cite any authority in support of its argument. "A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position. Failure to adequately brief an issue constitutes abandonment." *Seifeddine*, 327 Mich App at 519-520 (citation omitted). For its lender liability claim, defendant alleged that plaintiff owed defendant a duty to act with due care "and other fiduciary duties . . . ." But a fiduciary duty generally does not arise in the lender-borrower context. *Farm Credit Servs of Michigan's Heartland, PCA v Weldon*, 232 Mich App 662, 680; 591 NW2d 438 (1998). A fiduciary duty arises only "when there is a reposing of faith, confidence, and trust and the placing of reliance by one on the judgment and advice of another." *Id*. The duty of good faith imposed on contracting parties does not require a lender to surrender its contractual rights. *Id*. at 677. Defendant asserts that plaintiff urged defendant to terminate Quandel and inserted itself into defendant's meetings and conference calls. These facts do not establish that plaintiff acted in bad faith or owed a fiduciary duty. See *id*. at 680-681 (a lender's participation in a borrower's discussions regarding the borrower's activities did not create a fiduciary relationship).

Defendant argues that its claims for common-law and statutory conversion should have been allowed to proceed because plaintiff failed to disburse loan funds to defendant. As noted, however, plaintiff had no contractual obligation to disburse loan funds once defendant defaulted. But even if plaintiff had breached the loan agreement by refusing to disburse loan funds, this would not constitute conversion. Both statutory and common-law conversion require a "distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Magley v M&W, Inc*, 325 Mich App 307, 314; 926 NW2d 1 (2018) (quotation marks and citation omitted). The loan funds that plaintiff refused to disburse did not belong to defendant. "[A] conversion claim cannot be brought where the property right alleged to have been converted arises entirely from the plaintiff's contractual rights." *Llewellyn-Jones v Metro Prop Group, LLC*, 22 F Supp 3d 760, 788 (ED Mich, 2014) (quotation marks, brackets, and citation omitted).[18] A party's conduct may constitute both a breach of contract and an act of conversion only if there was a breach of a duty separate and distinct from the contractual duty. *Id*. Plaintiff owed no duty to disburse loan funds that was separate and distinct from its contractual duty. The trial court properly granted summary disposition to plaintiff on defendant's claims for conversion.

Defendant's challenge to the grant of summary disposition to plaintiff on the count of tortious interference with a business relationship lacks merit. Defendant alleged that, by failing to disburse loan funds, plaintiff interfered with defendant's business relationships with contractors, suppliers, subcontractors, retailers, and tenants, including with a new general contractor defendant had selected to replace Quandel. But as noted, plaintiff was entitled to enforce its contractual

---

[18] Decisions of lower federal courts are not binding on this Court but may be persuasive. *Vanderpool v Pineview Estates, LC*, 289 Mich App 119, 124 n 2; 808 NW2d 227 (2010).

rights. Defendant has provided no evidence that plaintiff was motivated by anything other than legitimate business reasons. See *Badiee v Brighton Area Sch*, 265 Mich App 343, 366; 695 NW2d 521 (2005) ("Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference [as required to support a claim for intentional interference with a business relationship]."). There is no evidence that plaintiff "intentionally committed an act wrongful per se or an unjustified lawful act with the purpose of interfering with [defendant's] business and contractual relationships." *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 383; 670 NW2d 569 (2003), aff'd 472 Mich 91 (2005).

Further, the trial court properly granted summary disposition to plaintiff on defendant's request for declaratory relief because that request was premised on defendant's other counterclaims, all of which were properly dismissed.

## C. CONFIRMATION OF THE SHERIFF'S SALE

Defendant next presents unpreserved arguments on appeal challenging the confirmation of the sheriff's sale of the property to plaintiff. Those arguments fail.

An issue must be raised in or decided by the trial court in order to be preserved for appeal. *Glasker-Davis v Auvenshine*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 345238); slip op at 3. Issue preservation requirements generally prohibit raising an issue for the first time on appeal, although a party need not object to a trial court's finding, decision, or sua sponte acts or omissions. *Id*. Defendant failed to respond to plaintiff's motion to confirm the sheriff's sale. This amounted to a failure to preserve the issue; this was not a mere finding, decision, or sua sponte action by the trial court to which defendant failed to object. The issue is therefore unpreserved for appellate review.

Review of this type of issue is ordinarily for an abuse of discretion. See *Provident Mut Life Ins Co of Philadelphia v Vinton Co*, 282 Mich 84, 89; 275 NW 776 (1937) ("In foreclosure proceedings, the trial court has a broad discretion in relation to confirmation; and a sale in conformity with the decree entered will ordinarily be confirmed."). Because the issue here is unpreserved, any review is limited to plain error affecting substantial rights. *Kloian v Schwartz*, 272 Mich App 232, 242; 725 NW2d 671 (2006). Defendant must show that an error occurred, the error was clear or obvious, and the error affected substantial rights. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). Generally, an error affects substantial rights if it is prejudicial, i.e., it affected the outcome of the case. *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

On November 15, 2018, the property was sold at public auction to plaintiff for $75 million. On November 21, 2018, plaintiff filed a motion to approve the sheriff's report on the sale and to confirm the sale. Defendant did not respond to the motion. A hearing on plaintiff's motion was held on November 29, 2018. On the same date, the trial court signed an order granting plaintiff's motion to approve the sheriff's report on the sale and to confirm the sale. The order noted that no objections were filed to the confirmation of the sale, even though notice of the sheriff's report on the sale was duly given to all interested persons.

Initially, this issue is moot. This Court generally does not decide moot issues. *B P 7*, 231 Mich App at 359. "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *Id*. As noted many times already, defendant failed to redeem the property within the statutory redemption period. See *Can IV*, 328 Mich App at 658, 666. As this Court explained in dismissing defendant's appeal from the judgment of foreclosure, defendant's "failure to redeem the property within the redemption period resulted in the extinguishment of all [defendant's] rights in and to the property. There remains no relief that this Court can grant it on appeal, so this appeal is moot." *Id*. at 666. The same reasoning applies here. Given the extinguishment of all of defendant's rights in and to the property that was sold at the sheriff's sale, there is now no relief that could be granted to defendant. Just as this Court has already dismissed as moot defendant's appeal from the judgment of foreclosure, defendant's unpreserved challenge to the sheriff's sale, which was part of the foreclosure proceedings, is moot.

In any event, defendant's arguments are devoid of merit. As noted, "[i]n foreclosure proceedings, the trial court has a broad discretion in relation to confirmation; and a sale in conformity with the decree entered will ordinarily be confirmed." *Provident Mut Life Ins Co of Philadelphia*, 282 Mich at 89. Defendant has identified no basis to conclude that the trial court abused its broad discretion in regard to confirmation or that the sale did not conform to the judgment of foreclosure. Defendant presents a series of confusing arguments challenging the amount of plaintiff's credit bid. Defendant cites no pertinent authority that supports its arguments.

Defendant notes that plaintiff's $75 million credit bid was $8.7 million less than the total amount derived from combining defendant's original loan and the receiver loan. Defendant suggests that this somehow violated MCL 570.1123(1), a provision of the CLA, which provides that a receiver's petition for authority to complete construction

> shall not be granted unless the court finds that the value added to the real property which will result from the construction is likely to exceed the cost of the additional construction, including all estimated overhead and administrative costs, together with interest on any funds that are to be borrowed for the construction.

This statutory language does not provide a ground to challenge a completed foreclosure sale. Additionally, as discussed earlier, the trial court determined when approving the receiver loan that MCL 570.1123(1) was satisfied because the value added to the property from the construction was likely to exceed the cost of the additional construction, and defendant has not established that the trial erred in its determination on this point. Simply stated, the calculation required by MCL 570.1123(1) does not pertain to the difference between the amount of plaintiff's credit bid and the total amount of debt associated with defendant's loan and the receiver loan.

Defendant argues that a determination of the fair market value of the property must be made pursuant to MCL 600.3280. But that statutory provision by its plain terms applies only to foreclosures *by advertisement*. The instant case involves a *judicial* foreclosure. In a judicial foreclosure, "the court may fix and determine the minimum price at which the real property covered by the mortgage or land contract may be sold at the sale under the forfeiture, foreclosure, or specific performance proceedings." MCL 600.3155. But defendant did not ask the trial court to set a minimum price for the foreclosure sale, and doing so is not mandatory under the statute. Defendant's argument under MCL 600.3280 fails.

Defendant finally argues that it was improperly held liable under the receiver loan. But the receiver loan and mortgage were authorized by the order appointing the receiver, and the receiver loan was also authorized by defendant's own mortgage. See also MCL 570.1123(1) ("The receiver may petition the court for authority to complete construction of improvements to the real property in full or in part, to borrow money to complete the construction, and to grant security, by way of mortgage or otherwise, for the borrowings."). In short, foreclosure of the receiver mortgage was authorized, it was against the property, and it did not impose more indebtedness on defendant.

## III. CONCLUSION

Two things have become clear in the tortured course of the appellate litigation involving these parties—first, the litigious nature of defendant, and second, that none of defendant's myriad and sometimes confusing arguments carry weight. This Court once again finds in favor of plaintiff. Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Michael J. Kelly

-26-